**Robert L. BELL dba Crescendo Publishers et al., Plaintiffs,**

v.

**PRO ARTS, INC., et al., Defendants.**

**No. C 71-661.**

United States District Court, N. D. Ohio, E. D.

Oct. 2, 1973.

---

18. By way of contract, see Scovill Mfg. Co. v. Dateline Elec. Co., Ltd., 319 F.Supp. 772 (N.D. Ill.1970).

William S. Burton, Arter & Hadden, Cleveland, Ohio, for plaintiffs.

Roger R. Ingraham, Medina, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

This is an action seeking injunctive relief and damages pursuant to 17 U.S. C. § 101 for alleged copyright infringements. The case came on for trial before this Court on August 13, 1973, jury having been waived by the parties. In accordance with Rule 52(a), F.R.Civ.P., the Court makes the following findings of facts and conclusions of law.

### FINDINGS OF FACT

A. *The Parties*

1. Plaintiff Bell, dba Crescendo Publishers, is a citizen of Massachusetts, having his principal place of business in the City of Boston. He is engaged in the business of book publishing.

2. Plaintiff Cuarta Corporation dba Crescendo Publishing Company, is a Massachusetts corporation, having its principal place of business in the City of Boston. It is engaged in the business of publishing music, text and trade books, and literary works.

3. Defendant Pro Arts, Inc. (hereinafter Pro Arts) is an Ohio corporation, incorporated in 1969, and originally having its principal place of business in Kent, Ohio. Pro Arts is now situated in Medina, Ohio. Defendants estimated the gross revenues of Pro Arts to have been $350,000. in 1969; $550,000. in 1970; $700,000. in 1971; $1,000,000. in 1972; and $1,200,000. in 1973. In 1973, approximately half of the gross revenues of Pro Acts resulted from the sale or exchange of approximately 1,500,000 posters.

4. Defendants Michael P. Trikilis (hereinafter M. Trikilis) and Theodore N. Trikilis (hereinafter T. Trikilis) are, respectively, the president and vice-president of Pro Arts, each owning forty percent of the stock of the corporation. M. Trikilis has been, and is, generally in

charge of productions and operations; and T. Trikilis has been, and is, generally in charge of sales and new product development.

### B. *DESIDERATA*

5. DESIDERATA is a prose poem, the full text of which, as published by plaintiff Cuarta Corporation, with distinctive printing and spacing figures and bearing copyright notice, "© 1927 Max Ehrmann, © Renewed 1954, Bertha Ehrmann, Crescendo Publishing Company, Boston 02116," is plaintiffs' Exhibit 1. DESIDERATA was written by Max Ehrmann. It was first published by Mr. Ehrmann, dba Indiana Publishing Company, on January 3, 1927, in Terre Haute, Indiana, and was first copyrighted January 6, 1927, under copyright registration # A962402 (PX–2A and PX–26). This copyright was renewed February 25, 1954, by Bertha K. Ehrmann, widow of Max Ehrmann, under renewal registration # R127188 (PX–2B, PX–27). Later DESIDERATA was included in a book entitled, *Poems of Max Ehrmann*, published November 22, 1948, by Bruce Humphries, Inc., of Boston under a contract and assignment dated March 4, 1948 (PX–3A) by and from Bertha K. Ehrmann, with and to Bruce Humphries, Inc., under copyright registration #A28266, as obtained December 13, 1948, by Bertha K. Ehrmann for her assignee, Bruce Humphries, Inc. (PX–3B, PX–28).

6. There is a myth that DESIDERATA was "Found in Old Saint Paul's Church, Dated 1692." This myth has no basis in fact whatsoever (PX–3G).

### C. *Plaintiffs' Claim of Title to DESIDERATA copyrights* [1]

7. The claim of title as to the copyrighted book, *The Poems of Max Ehr-*

*mann* (containing the work DESIDERATA) began with a March 4, 1948, agreement between Bertha K. Ehrmann and Bruce Humphries, Inc. (PX–3A). In this agreement, Bertha K. Ehrmann, as author, granted and assigned to Bruce Humphries, Inc. " . . . a work entitled *The Poems of Max Ehrmann* with all rights thereto pertaining, whether in whole or in part, with exclusive right and power, as attorney, in the name of the author, to take out copyright thereof, and any and every renewal of copyright thereof, and to hold and enjoy said copyright and renewal, and publish said work, in whole or in part, during the term or terms thereof, in all countries and in all languages." Bruce Humphries, Inc., also obtained the right to sell subsidiary publishing rights to the book.

8. On November 22, 1948, a book entitled *The Poems of Max Ehrmann* (containing DESIDERATA) was published by Bruce Humphries, Inc. On December 13, 1948, copyright registration for that book, # A28266 (PX–3B, PX–28) was issued by the Copyright Office in the name of Bertha K. Ehrmann, with the certificate being sent to her assignee, Bruce Humphries, Inc., in Boston.

9. Thereafter, on May 9, 1960, Bruce Humphries, Inc., was purchased by Reliance Corporation and was operated as Bruce Humphries-Division of Reliance Corporation (PX–3C). On October 24, 1967, R. R. Larsen and Co., Inc., later purchased at a lien sale all assets of Bruce Humphries-Division of Reliance Corporation, consisting of the " . . . name, tradename, goodwill, accounts receivable, copyrights, inventory office equipment, printing plates and customer lists . . ." of Bruce Humphries-Division of Reliance Corporation, then

---

1. In an effort to expedite the trial of this case, and because defendants failed to cooperate in connection with discovery pertaining to plaintiffs' claim of title to the copyrights in question, the Court permitted plaintiffs' counsel to submit, along with his proposed findings of fact and conclusions of law, and prior to decision by this Court, any and all documentary evidence relating to the claim of title. Counsel were instructed to agree on the authenticity of any such submitted documents unless a valid objection existed. There being no valid objection made to the documents plaintiffs offer for introduction into evidence (PX 26, 27, 28, 29), the documents are received.

being operated personally by plaintiff Bell as president. (PX–3D).

10. On September 30, 1968, plaintiff Bell purchased from R. R. Larsen and Co., Inc., dba Bruce Humphries Publishers, all rights previously acquired by Bruce Humphries Publishers with respect to *"The Poems of Max Ehrmann by Max Ehrmann"* and other literary works (PX–3E).

11. On January 16, 1962, Bertha K. Ehrmann died in Terre Haute, Indiana. Her will (PX–29) was admitted to probate in Vigo (County, Indiana) Circuit Court under Estate # 24188. By this will, Bertha K. Ehrmann left her entire net estate to her nephew, Richmond Wight. Her net estate consisted of specified personal property, literary rights relative to the writings of her late husband Max Ehrmann, and a trust established for the sole benefit of her same nephew, Richmond Wight, after payment of debts and expenses.

The provision as to the bequest of Bertha K. Ehrmann to her nephew, of rights to the writings of Max Ehrmann, appears in Item III of her will:

"ITEM III

" \* \* \*

"I further bequeath to my nephew, Richmond Wight, all my right, title and interest in and to all royalties and income from the writings, poems and plays of Max Ehrmann, including royalties from individual plays."

12. Thereafter, on May 14, 1971, Richmond Wight, nephew of Bertha K. Ehrmann, deceased, made two assignments to plaintiff Bell (PX–2C and PX–3F).

13. On May 14, 1971, with respect to the single literary work, DESIDERATA, Richmond Wight, in plaintiffs' Exhibit 2C, after reciting the facts previously found herein in Findings 5 and 11, assigned to plaintiff Bell:

" . . . all of Assignor's [Richmond Wight's] right, title and interest in and to Poem [DESIDERATA] and the copyright and renewal copyright covering Poem [DESIDERATA] and all other rights pursuant thereto, such as Assignor [Richmond Wight] may possess." (PX–2C)

This assignment was recorded in the Copyright Office June 23, 1971, Volume 1419, pp. 219–220.

14. Also on May 14, 1971, with respect to the book of collected poetry written by Max Ehrmann, entitled *The Poems of Max Ehrmann* and including therein DESIDERATA, Richmond Wight, after reciting the facts previously found herein in Findings 9 and 11, assigned to plaintiff Bell:

" . . . all of Assignor's [Richmond Wight's] right, title and interest in and to Book [*The Poems of Max Ehrmann*] and the copyright, copyright registration and right to renew the copyright registration covering Book [The Poems of Max Ehrmann] and all other rights pursuant thereto such as Assignor [Richmond Wight] may possess." (PX–3F)

This assignment was recorded in the Copyright Office June 23, 1971, Volume 1419, pp. 217–218.

15. On February 1, 1972, plaintiff Bell assigned to plaintiff Cuarta all of Bell's publishing rights to the book entitled *The Poems of Max Ehrmann* (including DESIDERATA) under copyright registration # A28266 (PX–3B) and under an assignment to plaintiff Bell, of residual publishing rights to that book from Richmond Wight as found in Finding 14 above. This assignment from plaintiff Bell to plaintiff Cuarta was recorded in the Copyright Office April 17, 1972, Volume 1446, pp. 213–215 (PX–4).

D. *Pro Arts Utilization of DESIDERATA, Without Notice of Copyright, Before and After Written Notice to Cease and Desist*

16. Plaintiffs' Exhibit 6 is a full-size black and white poster bearing the caption DESIDERATA in large type. It depicts a placid beach or water scene. On the bottom portion of that poster the

full text of DESIDERATA is printed in distinctive type with the first three lines in full capitals and with distinctive spacing figures inserted between certain sentences, with two such spacing figures inserted at the end of the text, in the same manner and way as appear on copies of DESIDERATA as legally published by Crescendo Publishing Company (PX–1). Exhibit PX–6 bears no notice of copyright with respect to the DESIDERATA portion thereof. It does bear the unexplained notation "© 1968 AMERICAN NEWSREPEAT CO., 243 Collins St., San Francisco, Calif. 94118." Upon inquiry directed to that address January 7, 1969, plaintiff Bell was informed as of January 28, 1969, that American Newsrepeat Company had gone out of existence in May 1968 (PX–8 and PX–9). Plaintiff Bell was thereafter unable to trace American Newsrepeat Company.

17. The Pro Arts 1970 catalog (PX–21), as distributed by Pro Arts to customers and prospective customers requesting same, included code numbered pictures of approximately 175 different poster designs, including No. OC37 DESIDERATA and No. OC38 DESIDERATA (picture). An undated Pro Arts advertising flyer (PX–20), utilized by Pro Arts in unknown quantities and during unknown periods of time, depicts, for sale, five selected color litho posters and eight selected black and white posters, included No. OC37 DESIDERATA. Each of the No. OC37 DESIDERATA items depicted in PX–20 and PX–21 at the bottom of the poster contains the words, "Found in Old Saint Paul's Church; Dated 1692." The No. OC38 DESIDERATA (picutre), depicted in the 1970 Pro Arts catalog, shows no bottom margin and thus shows no space wherein a notice of copyright could be inserted. No copyright notice of any kind appears in either the 1970 Pro Arts catalog or in the undated Pro Arts advertising flyer with respect to any of the DESIDERATA items depicted for sale therein.

18. With respect to item No. OC38 [DESIDERATA (picture)], as offered for sale in the 1970 Pro Arts catalog, the Court has noted the identity of the placid beach or water scene and text of DESIDERATA there depicted, with the placid beach or water scene and text of DESIDERATA depicted in PX–6 (See Finding 17). The Court has also noted that Pro Arts, in its depictions of DESIDERATA, in both the Pro Arts 1970 catalog (PX–21) and in the Pro Arts advertising flyer (PX–20), has used a type face; a technique of capitalizing portions of the text of DESIDERATA; and an arrangement of spacing figures, which are identical with those used by plaintiffs in their publication of their copyrighted representation of DESIDERATA (PX–1).

19. During the Boston Gift Show, held September 20–24, 1970, plaintiff Bell noted that a poster containing the full text of DESIDERATA and a pictorial representation of a placid beach or water scene (similar both to the placid beach or water scene with the full text of DESIDERATA included, shown in PX–6 and in Pro Arts 1970 catalog item No. OC38) was being displayed and offered for sale in Room 206 of that show. The program for the 1970 Boston Gift Show listed Pro Arts, Inc., P. O. Box 287, Kent, Ohio 44240, telephone (216) 296-4922, as the exhibitor in Room 206. Plaintiff Bell talked to the person in charge of Room 206, one Joseph Malone, advised Malone of Bell's ownership of copyright rights regarding DESIDERATA and demanded that the poster containing the placid beach or water scene and the full text of DESIDERATA be removed. It was removed. Upon inquiry, Malone informed Bell that the president of Pro Arts was Mike Trikilis. Bell made contemporaneous hand-written notes regarding this information and the Kent and Medina addresses of Pro Arts on page 238 of the 1970 Boston Gift Show Program (PX–5).

20. On September 25, 1970, Bell forwarded by certified mail # 364126, re-

turn receipt requested, a letter addressed to Pro Arts Company, Box 287, Kent, Ohio 44240, referring to his conversation with Joseph Malone at the Boston Gift Show and demanding that Pro Arts " . . . cease and desist all sales of DESIDERATA in any form whatsoever. . . ." not bearing a proper copyright notice. Bell also demanded:

"In addition, you are to furnish us with the names and addresses of all manufacturers from whom you have purchased DESIDERATA together with the number of posters purchased and the list price from the beginning of your doing business, to the present with each firm. Or if you manufacture posters or any other form of DESIDERATA yourselves, you are to furnish us with the number sold and the list price of each." (PX-7)

The return receipt for Bell's certified mail # 364126 was returned to Bell evidencing delivery of that letter on September 30, 1970, in Kent, Ohio, to one Gary S———, a person identified during the trial by M. Trikilis as an employee of Pro Arts (PX-7).

21. During the period subsequent to plaintiff Bell's reception of the above-described return receipt (# 364126) and June 26, 1971, when this action was filed, defendants, although repeatedly requested to do so, both by Bell and counsel for Bell, failed to supply requested information as to the sources, quantities and prices of DESIDERATA items obtained by Pro Arts from others, despite repeated statements that such information would be supplied. As indicated in Finding 24, defendants did, ultimately, identify Audio Visual Design of Clinton, Massachusetts, to Bell as one of the Pro Arts sources of DESIDERATA posters, without, however, supplying the specifically requested information as to the quantities, dates and prices of such acquisitions and a sample of an Audio Visual Design DESIDERATA poster.

22. More specifically, Bell, having received no response from Pro Arts to his

certified letter of September 25, 1970, on October 7, 1970, forwarded another letter to Pro Arts Company (PX-11) at the same address in Kent, Ohio, demanding a response to the certified mail of September 25, 1970, and further demanding " . . . a clear and unequivocal statement as to whether or not you are now or ever have been manufacturers of DESIDERATA in any printed form." Bell enclosed with this letter a Xerox copy of certified copyright renewal registration # R127188 with respect to DESIDERATA, as obtained by Bertha K. Ehrmann, February 25, 1954 (PX-2B).

23. On October 20, 1970, having still received no response from Pro Arts to his letters of September 25 and October 7, 1970, Bell telephoned Pro Arts. The person answering the telephone identified himself as T. Trikilis and said Pro Arts had not been printing DESIDERATA and that he would get back to Bell "by the next week" in response to Bell's demands for information as to the Pro Arts sources of DESIDERATA posters.

24. On November 12, 1970, still having received no response from Pro Arts to his previous letters and telephone call, Bell again telephoned Pro Arts. The person answering again identified himself as Ted Trikilis and said that a Pro Arts source of DESIDERATA had been Audio Visual Design in Clinton, Massachusetts; that Pro Arts was also pursuing Audio Visual with respect to copyrighted properties of Pro Arts; and that Trikilis would get back to Bell with the number of posters Pro Arts had obtained from Audio Visual.

25. On November 30, 1970, still having no written response from Pro Arts to his previous letters and telephone calls, Bell again telephoned Pro Arts. This time, M. Trikilis answered and promised to get the requested information for Bell, promptly, as to how many DESIDERATA posters had been sold by Pro Arts and their source.

26. On December 21, 1970, still having received no response from Pro Arts, Bell again submitted a written demand

to Pro Arts. This time, Bell's letter was addressed to Mike Trikilis, Pro Arts, Inc., 1040 Industrial Parkway, Medina, Ohio 44256 (PX–12). In this letter, Bell recited having called Pro Arts several times and having spoken to both M. Trikilis and T. Trikilis; and further stated that both of them had failed ". . . in every promise you have made to send me information relative to sales of DESIDERATA and to send me a poster manufactured by Audio Visual in Clinton, Massachusetts." Bell's letter demand of December 21, 1970, further stated:

"As you know, whether you manufacture or distribute, you are legally responsible for infringement. I have agreed that we will not pursue your firm further provided that we receive a SIGNED NOTARIZED statement as to the number of posters purchased or exchanged with other companies, as well as a statement that you did not manufacture DESIDERATA."

Bell also advised Pro Arts that legal action would follow if the requested affidavit was not promptly received.

27. Thereafter, still having received no written response from Pro Arts, Bell referred the matter to counsel in Cleveland. Counsel for Bell then, through a series of telephone calls and correspondence, first with M. Trikilis and later with former counsel for Pro Arts (PX–13 to 13F, inclusive) continued, unsuccessfully, to encourage M. Trikilis to perform his previous promises to Bell and to counsel for Bell, namely, to supply Bell with an affidavit as to the extent, duration and sources of Pro Arts' previous sales of, and dealings in, DESIDERATA items. All such efforts failed. On request, former Pro Arts counsel were furnished with documentation as to copyrights covering DESIDERATA and Bell's ownership of certain of such rights, including copies of copyright renewal registration # R127188 of February 25, 1954, with respect to DESIDERATA as a single literary property (PX–2A); the assignment of September 30, 1968, transfer-

ring to Bell, among other things, all right, title and interest to the titles, copyrights, plates and inventory of the book *The Poems of Max Ehrmann* (including DESIDERATA) and other literary works (PX–3E); and an excerpt from *Together* magazine of June, 1966, explaining the "Found in 1692" myth with respect to DESIDERATA (PX–14) and an offer to supply additional documentation, if requested (see April 19, 1971, letter of Bell's counsel [PX–13F]).

28. The instant action was thereafter filed June 26, 1971, in the absence of any response from Pro Acts or its former counsel as to the repeated requests for information made by or on behalf of Bell during the nine-month period from September 25, 1970, through June 25, 1971 (see plaintiffs' exhibits 11 through 13F, inclusive).

29. Pursuant to a January 25, 1972, pretrial order of Contie, J., Pro Arts supplied an affidavit dated February 15, 1972, admitting that Pro Arts had ". . . purchased and/or sold or distributed . . . approximately three thousand one hundred and ninety-six (3,196) [posters] . . . incorporating therein a poem entitled 'DESIDERATA' . . ." and that:

"Affiant says that the reason he is unable to determine the exact amount purchased and/or sold is due to the fact that said [DESIDERATA] posters were purchased from numerous parties including truck jobbers who would arrive at Pro Arts premises at non-scheduled times and trade and/or sell or purchase posters.

"Affiant says further that one of the companies that Pro Arts did purchase these [DESIDERATA] posters from was Audio-Visual Design, Post Office Box 354, Clinton, Massachusetts 01510; that the exact amount of the posters purchased from Audio-Visual Design affiant is unable to determine." (PX–22)

30. One Hundred Twenty Seven (127) Pro Arts invoices (PX–18) show

sales by Pro Arts to approximately 90 poster outlets throughout the United States, of at least 1,681 DESIDERATA items (either No. OC37 DESIDERATA or No. OC38 DESIDERATA (picture) or both) during the period from May 1970 through June 1971. M. Trikilis also admitted at the trial that Pro Arts had sold an additional 1600 DESIDERATA items of the picture-poster type, under two invoices (PX–23 Pro Arts invoice evidencing sale of 1000 No. OC38 DESIDERATA (picture) items on January 27, 1971; and PX–24 Pro Arts invoice evidencing sale of 600 No. OC38 DESIDERATA (picture) items on April 21, 1971).

31. Pro Arts invoices show that Pro Arts sold in excess of 2000 DESIDERATA items *after* receiving written notice under plaintiff Bell's certified mail (# 364126) on September 30, 1970, followed by later continuing demands from plaintiff Bell and counsel for Bell for Pro Arts to cease and desist dealing in DESIDERATA items not bearing proper copyright notice.

32. In his deposition, taken in January 1973, more than two years after Bell's written notice of September 25, 1970, to cease and desist, M. Trikilis admitted that in addition to Audio Visual Design of Clinton, Massachusetts, Pro Arts, Inc., may have obtained copies of DESIDERATA items from Specialty Imports in Tennessee; Hip Products in Chicago; Saladin Products in California; and San Francisco Poster Company in various locations. However, in his testimony at the trial, M. Trikilis repeatedly stated he did not know how many such DESIDERATA items Pro Arts may have purchased or traded for with such sources of supply and other unidentified sources of supply, which he knew of, but which he could not identify as to name, location, date, quantities, or prices or values at which Pro Arts had purchased or traded for such DESIDERATA items.

33. M. Trikilis further testified that although he had previously failed, during his deposition, to remember same, he "just remembered" on the morning of the trial that Pro Arts had made several purchases, at unspecified times and on unspecified terms, of DESIDERATA items "in the hundreds each time" from an organization he then identified as Steffen & Gaines in Sausalito, California. Neither M. Trikilis nor T. Trikilis, although requested to do so, could produce any records, other than the invoices referred to in Finding 30, as to the amounts, dates, times, places, quantities, prices, and sources of DESIDERATA items purchased or traded for by Pro Arts. Although Pro Arts admitted printing its own 1970 catalog (PX–21) and its own advertising flyer (PX–20), each of which contained one or more reproductions of DESIDERATA, Pro Arts denied it had ever printed or produced any DESIDERATA items, utilizing its own production facilities.

34. Pro Arts admitted its 127 invoices, which evidenced sales of DESIDERATA items (PX–18), showed that the orders for such sales were obtained by or credited to 13 different salesmen, including T. Trikilis. Pro Arts further admitted that at no time were any Pro Arts' salesmen given instructions to cease and desist selling or otherwise dealing in DESIDERATA items.

35. M. Trikilis admitted that he gave the following testimony in his deposition:

Q. When you sold DESIDERATA, you always sold them under the OC37 stock number?

A. Not necessarily. I believe we had variations. The poster came in three or four different ways.

Q. The DESIDERATA poster came in three or four different ways?

A. Correct.

Q. All right. What other different ways?

A. One was on parchment.

Q. Okay.

A. One was just on paper.

Q. Yes.

A. One was with a picture of a lake or something like that. And I think one was on a scroll. There may be even more variations, but we didn't list them all. We just put down one. Whatever we happened to have at the time was what we probably shipped.

36. The evidence has shown that the poster making, selling, distributing and trading business, in effect, is a rough and tumble business, participated in by many transient operators, some of whom Pro Arts dealt and traded with, without even knowing their names. In effect, some poster makers, traders, and distributors were seen once, and then never seen again. Others were more established. In effect, record keeping in the poster exchange and trading business is informal and sometimes non-existent, as when quantities of posters at one value are traded for lessor or greater quantities of posters at a different value.

E. *Damages*

37. Pro Arts did not submit evidence of its costs with respect to its acquisition of DESIDERATA items for sale to, or exchange with, others.

38. Plaintiffs' actual damages are not readily ascertainable because (1) Pro Arts did not know how many DESIDERATA items it had sold or exchanged in total. Hence, Bell had no means of establishing his loss of royalties occasioned by sales and exchanges of DESIDERATA items by Pro Arts as an unlicensed seller, or his further losses arising from being deprived of an undisclosed number of opportunities to sell his own renditions of DESIDERATA as manufactured and offered for sale by Crescendo Publishing Company (See PX–1); and (2) by selling DESIDERATA items in the form advertised and shown by Pro Arts as No. OC37—bearing the words, "Found in Old Saint Paul's Church; dated 1692," Pro Arts aided in the perpetuation of the myth that DESIDERATA was in the public domain, due to alleged ancient origins; and (3) by selling DESIDERATA items in the form shown by Pro Arts as No. OC38, depicting a placid beach or water scene with the full text of DESIDERATA shown below—whether such posters carried the notation "© 1968 American Newsrepeat Co., 243 Collins St., San Francisco, California 94118," or not—Pro Arts aided in the perpetuation of other myths, i. e., that DESIDERATA had been copyrighted by American Newsrepeat Company or that DESIDERATA itself is not copyrighted.

F. *Plaintiffs' Efforts to Police its Copyright Rights Relative to DESIDERATA*

39. As of March 5, 1973, Bell had, in addition to the present action, instituted four other lawsuits charging many others with infringements of DESIDERATA; licensed six prior infringers upon payment of royalties for past infringements; settled with five infringers who had paid damages; and had licensed ten other organizations to utilize DESIDERATA in variously defined ways and forms.

CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter, under 28 U.S.C.A. § 1338, and of the parties.

2. The economic philosophy behind the power of Congress to grant copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare in that field. Mazer v. Stein, 347 U.S. 201, 219, 74 S.Ct. 460, 28 L.Ed. 630 (1954).

3. Under the U. S. Copyright Act, any copy of a copyrighted article " . . . made or sold by or found in the possession of the infringer. . . ." after notice, is a separate infringement (17 U.S.C. § 101). With respect to infringements occurring before or without notice, innocence of intention to

infringe is no defense. *See* Shapiro, Bernstein & Co., Inc. v. H. L. Green Co., Inc., 316 F.2d 304, 308 (2d Cir. 1963).

4. This copyright action would not have been necessary, but for the repeated failures of defendants to supply Bell, as copyright proprietor of DESIDERATA, with facts, figures, and samples of the infringing DESIDERATA posters. Although such information was repeatedly promised by defendants, they, for whatever reason, failed to supply it to Bell and thereby deprived Bell of the data he needed, properly to protect and defend his copyright rights to DESIDERATA.

5. Defendants M. Trikilis and T. Trikilis are, respectively, the president and vice president of Pro Arts. They are, between them, the owners of 80% of the stock of that fast-growing company, whose estimated gross revenues have risen from approximately $350,000. in 1969 to approximately $1,200,000. in 1973. Both of them have been actively engaged in the general operation of Pro Arts since its inception. Nevertheless, both these defendants repeatedly testified, "I don't know," or the equivalent, with respect to relevant matters such as, but not limited to, the total number, the prices and the sources of infringing DESIDERATA posters which Pro Arts had admittedly purchased or traded for, both before and after actual notice of plaintiff Bell's copyright rights with respect to DESIDERATA. On the record made in this case, such matters were, or should have been, peculiarly within the knowledge of such defendants. This Court has, therefore, taken into account, in the formulation of its Conclusions of Law, that through no fault of Bell and through no lack of diligent inquiry by him, both before and during the trial, these defendants have, for whatever reason, impeded plaintiffs from obtaining prompt and accurate information as to the infringing activities of Pro Arts and others.

6. Defendants, in explanation of their collective lack of records as to their purchases and trades made to obtain infringing DESIDERATA posters and their failure to supply plaintiffs with samples of same, described the poster-youth novelty business in which they were engaged, in effect, as a "rough and tumble" business, subject to informal operating procedures.

The law does not countenance such circumstances or explanations as somehow excusing disregard of the property rights of others. *Cf.* City Loan and Savings Co. v. Employers' Liability Assurance Corp., 249 F.Supp. 633, 657 (N. D.Ohio 1964); aff'd., 356 F.2d. 941 (6th Cir. 1966).

7. Plaintiff Bell is now the proprietor of residual author's copyright rights to DESIDERATA as found in Findings 5, 11 and 13. Plaintiff Cuarta is now the proprietor of residual publishing copyright rights to the book entitled, *The Poems of Max Ehrmann* (including DESIDERATA), as found in Findings 9, 11, 14 and 15.

8. On September 25, 1970, when plaintiff Bell directed a letter by certified mail (# 364126) to Pro Arts in Kent, Ohio, demanding that Pro Arts cease and desist utilizing DESIDERATA and further demanding information as to the source and quantity of DESIDERATA items then maintained by Pro Arts, plaintiff Bell had the right and duty to proceed as he did.

9. The evidence is conclusive that on September 25, 1970, plaintiff Bell mailed, by certified mail, a cease and desist demand to Pro Arts. The requested return receipt for that letter (# 364126), moreover, demonstrates that the letter had been delivered to an admitted employee of Pro Arts at Kent, Ohio (P.O. Box 287) on September 30, 1970 (PX–7).

Defendants M. Trikilis and T. Trikilis, however, deny that plaintiff Bell's letter demand of September 25, 1970, was seen by them or brought to their attention. This dispute raises a

question of agency. Whether the authority of the party who signed the return receipt (# 364126) on behalf of Pro Arts, in Kent, Ohio, on September 30, 1970, was express, implied or apparent, the result is the same. Since the party who signed the receipt was an employee of Pro Arts, it follows that whether that employee did or did not bring the certified letter to the attention of the president or vice president of Pro Arts, plaintiff Bell had done all he could do to notify Pro Arts; and the fault, if fault there was in bringing the letter to the attention of the officers of Pro Arts, is the fault of Pro Arts for which Pro Arts, and not Bell, is responsible. 2 Ohio Jur.2d, Agency § 91. Otherwise, the anomalous and unacceptable situation would arise whereunder any corporate addressee could avoid the effect of the receipt of certified mail merely by denying, not that the letter was delivered to the corporation, but rather by denying only that the letter was brought to the attention of an appropriate representative of the corporation. The Court concludes, therefore, that Pro Arts did receive written notice to cease and desist utilizing DESIDERATA in any unauthorized manner on September 30, 1970. In addition, the evidence is undisputed that Pro Arts, at or about the time of receipt of Bell's letter of December 21, 1970 (PX–12), had ample notice of Bell's rights with respect to DESIDERATA.

■ 10. The evidence as to continued infringement of DESIDERATA by defendants, after notice, is clear with respect to the sale of more than 2000 DESIDERATA posters by Pro Arts, as shown by copies of its invoices which are in evidence. What is not clear in the evidence is the total number of DESIDERATA articles that were sold, purchased, or traded for by defendants, both before and after written notice from plaintiff Bell.

11. The Court concludes that plaintiffs' damages are not readily ascertainable. This is so, regardless of the actual number of DESIDERATA articles sold by defendants, over and above the more than 2000 copies sold after notice. It is clear that each of the DESIDERATA items sold and/or traded for by defendants, both before and after notice, damaged Bell in at least one of the following three ways:

(A) Posters bearing the mythical notation, "Found in Old Saint Paul's Church; Dated 1692" perpetuated the myth that DESIDERATA was in the public domain and was not copyrighted.

(B) Beach scene posters containing the full text of DESIDERATA and bearing a misleading indication of non-applicable copyright by American Newsrepeat Co. of San Francisco stated or perpetuated a different myth that American Newsrepeat Co., and not plaintiffs, was the proprietor of a copyright to DESIDERATA.

(C) Beach scene posters containing the full text of DESIDERATA, but having no bottom margin (as shown in item No. OC38 in the 1970 Pro Arts catalog) and therefor showing no notice of copyright whatsoever, denied plaintiffs' copyright rights by inferring no such copyright rights existed.

12. 17 U.S.C.A. § 101 provides, in effect, that where actual damages to the copyright proprietor and/or profits accruing to the infringer, as a result of infringing conduct, are not ascertainable with accuracy or precision, as here, the trial court has discretionary authority to award damages in lieu of actual damages up to and including $5000.

It has long been the rule in this District, as decided in Sebring Pottery Co. v. Steubenville Pottery Co., 9 F.Supp. 384 (N.D.Ohio 1934), that with respect to such statutory "in lieu" damages:

". . . where the damages are indirect and not capable of ascertain-

ment, the compensation which the copyright proprietor shall receive for the injuries caused by the infringer is committed to the discretion of the trial judge." (9 F.Supp. at 389)

13. In view of the circumstances disclosed by the testimony and by the exhibits, the Court finds defendants Pro Arts, Inc., Michael P. Trikilis and Theodore N. Trikilis to be jointly and severally liable as infringers of the valid copyrights of plaintiffs. The Court awards to plaintiffs damages in lieu of actual damages in the amount of Five Thousand Dollars ($5,000.).

14. Under appropriate circumstances, punitive or exemplary damages may be awarded in copyright actions. *See e. g.*, Nash v. Alaska Airlines, Inc., 94 F.Supp. 428 (S.D.N.Y.1950). This Court cannot say the circumstances of this case necessitate or require the imposition of punitive damages. Accordingly, no such damages are awarded.

15. 17 U.S.C. § 116 authorizes the allowance of full costs and attorneys' fees to the prevailing party in a copyright action. Full costs and reasonable attorneys' fees should be awarded to plaintiffs.

### ORDER

Accordingly, it is hereby ordered and adjudged that:

(1) Pro Arts, Inc., Michael P. Trikilis and Theodore N. Trikilis, alone or through agents, distributors, and all others in privity with them, are permanently enjoined from further infringing copyrights # R127188 and # A28266 by dealing in, copying, printing, selling, possessing or otherwise making any further use of DESIDERATA or any of the other literary works of Max Ehrmann covered by the aforementioned copyrights, without the express written permission of the copyright owners.

(2) Plaintiffs recover of defendants Pro Arts, Inc., Michael P. Trikilis and Theodore N. Trikilis jointly or severally the sum of Five Thousand Dollars ($5000.).

(3) Plaintiffs are awarded full costs and reasonable attorney's fees. Determination of such attorney's fees are deferred until submission by plaintiffs' attorney of an affidavit setting forth the time and effort allotted to this case together with a reasonable hourly rate. Defendants may file specific objections to the attorney's fees requested by plaintiffs' attorney in his affidavit.

It is so ordered.