**NINTENDO OF AMERICA, INC., Plaintiff,**

v.

**ELCON INDUSTRIES, INC., et al., Defendants.**

Civ. No. 82–72398.

United States District Court, E.D. Michigan, S.D.

Oct. 4, 1982.

Joseph J. Serritella and Michael B. Staebler, Detroit, Mich., for Nintendo.

James R. Daoust, Mount Clemens, Mich., for Herb's Hideaway.

Ernest I. Gifford, Birmingham, Mich., for Elcon Industries.

Richard A. Zussman, Detroit, Mich., for Belmark Lanes, B'ham Bowl, Fiesta Lanes, 5 Star Lanes, Plymouth Bowl, Redford Lanes, Thunderbird Lanes, Thunder Bowl & Lounge, Town & Country Lanes, Walby's and Wonderland Lanes.

A. Jeffrey Winton, Southfield, Mich., for Robert Ameriguian and Frank Houghton.

Ronald S. Longhofer, Detroit, Mich., for Great Scott Supermarkets.

Daniel D. Swanson, Southfield, Mich., for Dino's Pizza.

Samuel T. Sanom, Detroit, Mich., for Helen Kelley.

Gilbert Gugni, Southfield, Mich., for Jamil Akhtar and Barbara Baldwin.

Jeffrey A. Hansche, Union Lake, Mich., for North American Interstate.

Paul T. Garvey, St. Clair Shores, Mich., for Elias Bros. Restaurant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

Plaintiff, Nintendo of America, Inc., (Nintendo), has filed a complaint alleging piracy by defendants of its electronic audiovisual game known as "Donkey Kong." The complaint states three causes of action: (1) copyright infringement under 17 U.S.C. § 101 *et seq.* in Count I, (2) false designation of origin and false representation in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in Count II, and (3) unfair competition in violation of the common law of Michigan and the Michigan Consumer Protection Act, M.C.L.A. § 445.-901 *et seq.* in Count III. This matter is now before the Court on Nintendo's motion for a preliminary injunction pursuant to Fed.R. Civ.Pro. 65(b). Nintendo seeks preliminary injunctive relief based only on its copyright infringement and unfair competition claims.

Plaintiff's complaint was filed on June 30, 1982. On July 1, 1982, the Court granted plaintiff's *ex parte* motion for a temporary restraining order (TRO) and ordered that a hearing on plaintiff's motion for a preliminary injunction be set for July 9, 1982. The Court also ordered the impoundment of certain electronic audio-video games which allegedly infringed on plaintiff's copyright. On July 9, 1982 the parties stipulated to extend the TRO and adjourn

the hearing until July 28, 1982. On July 15, 1982, plaintiff filed an amended complaint naming additional defendants and on July 16, 1982 plaintiff filed a further motion for a preliminary injunction against the additional defendants. On July 23, 1982 the parties agreed to extend the TRO and adjourn the hearing on the motion for a preliminary injunction until August 23, 1982.

The hearing was duly held on August 23, 1982. For good cause shown and with the consent of the defendants who appeared, the TRO was continued by order of the Court to allow the parties to file additional papers. The TRO is set to expire on the date this Court issues its order on the motion for a preliminary injunction.

The following defendants have stipulated to a consent preliminary injunction: Joy Amusements Co.; Belmark Lanes, Inc.; Birmingham Bowling, Inc.; Fiesta Lanes, Inc.; 5 Star Lanes, Inc.; Great Scott Supermarkets, Inc.; Garden Lanes; Mayflower Lanes, Inc.; Plymouth Bowl, Inc.; Redford Lanes, Inc.; Target International Co.; Thunderbird Lanes, Inc.; Thunder Bowl & Lounge, Inc.; Town and Country Lanes, Inc.; Walby's, Inc.; and Wonderland Lanes, Inc. The stipulation also covers certain other parties who are not defendants but who agreed to submit to imposition of a permanent injunction by consent. None of the findings or conclusions herein are directed at any of these defendants or parties.

The following defendants have either failed to appear or appeared and did not oppose the motion for a preliminary injunction: Jamil Akhtar and Barbara Baldwin, individually and d/b/a Canton Wizard; Robert Ameriguian and Frank A. Houghton, individually and d/b/a Video Fun Palace; Vito Borgia and Joseph Borgia, individually and d/b/a Space Chase Arcade; Thomas A. Flora, individually and d/b/a Mickey's Pizza; Herb's Hideaway, Inc.; Michigan's Dino's Pizza, Inc.; Harry Prazuch and Marcella Prazuch, individually and d/b/a Club 27; Gerald Payne, individually and d/b/a Comic Corner; Dawson & Sons; North American Interstate, Inc.; Venture Into Products Marketing and Sales Limited; Dean Deratny; City Recreation, Inc.; and Helen Kelley. The Court will issue a preliminary injunction against these defendants because plaintiff has made the showing required for its issuance against these defendants.

The two remaining defendants, Elcon Industries, Inc. and Andre R. Dubel, have appeared and opposed the motion for a preliminary injunction on the merits. This memorandum opinion is addressed to these two defendants. After careful consideration of the evidence produced at the hearing on August 23, 1982, the Court makes the following findings of fact and conclusions of law in accordance with Fed.R.Civ. Pro. 52(a) and 65(d).

*Findings of Fact*

Plaintiff Nintendo is a corporation organized and existing under the laws of the State of Washington with its principal place of business in Seattle, Washington. It is engaged in the business of marketing, distributing and selling coin-operated electronic audio-video games in the United States. Plaintiff is a wholly owned subsidiary of Nintendo Co., Ltd., a corporation existing by and under the laws of Japan with its principal place of business in Japan. Nintendo Co., Ltd. is a manufacturer of coin-operated audio-video games that are imported and distributed in the United States by plaintiff. Plaintiff also purchases some component parts from Nintendo Co., Ltd. which it assembles into games using cabinets purchased in the United States. Plaintiff sells only its own products and products manufactured by Nintendo Co., Ltd.

Defendant Elcon Industries, Inc. is a Michigan corporation engaged in the assembly and sale of coin-operated electronic video games and video components and has a place of business in Royal Oak, Michigan. Defendant Andre R. Dubel is and has been the president of Elcon Industries, Inc.

Prior to July of 1981, Nintendo Co., Ltd. created and began manufacturing an audio-video game called Donkey Kong and first published the game in Japan on July 9, 1981. An English translation of the Japanese term Donkey Kong is "crazy gorilla."

Nintendo Co., Ltd. expended over $100,-000.00 in direct development of the game, and Nintendo Co., Ltd. hired Ikegami Tsushinki Co., Ltd. to provide mechanical programming assistance to fix the software created by Nintendo Co., Ltd. in the storage component of the game. The name "Ikegami Co. Lim." appears in the computer program for the Donkey Kong game. Individuals within the research and development department of Nintendo Co., Ltd., however, created the Donkey Kong concept and game. The operation of the Donkey Kong game includes the use of the audio-visual material which was originally created for use in the game by Nintendo Co., Ltd.

On July 27, 1981, Nintendo Co., Ltd. assigned all of its rights, title and interest in and to the United States copyrights in the Donkey Kong game to the plaintiff. The United States Copyright Registration No. PA 115–040 identifies Nintendo Co., Ltd. as the author of the entire audio-visual work [1] and indicates that plaintiff obtained ownership of the copyright through the assignment from Nintendo Co., Ltd. The copyright registration was issued to plaintiff with an effective date of July 30, 1982. It covers the entire audio-video presentation of the Donkey Kong game. Plaintiff has complied with all statutory requirements to perfect its copyright claim, including the display of a copyright notice on each game unit it distributes.

In September 1981, Nintendo Co., Ltd. entered into a licensing agreement in Japan with Falcon, Inc., another Japanese corporation. This agreement authorized Falcon to produce a game called Crazy Kong which was to be identical or similar to Donkey Kong. Nintendo Co., Ltd. supplied stickers to Falcon to attach to the printed circuit boards used in the Crazy Kong game. The stickers were printed in the English language and indicated that the Crazy Kong circuit board was manufactured under a license from Nintendo Co., Ltd. Falcon paid a royalty of 10,000 yen to Nintendo Co., Ltd. for each game manufactured by Falcon.

The license agreement expressly limited the right of Falcon to sell or use the Donkey Kong game under the name Crazy Kong to the territories of Japan. It prohibited Falcon from importing or exporting these machines or any similar machine and from having any third party produce or sell any such machine. It also prohibited Falcon from importing or exporting Donkey Kong or Crazy Kong circuit boards into the United States or anywhere outside of Japan. The license agreement was terminated on January 29, 1982.

During the period the license agreement was in effect, plaintiff was the proprietor of all right, title and interest in and to the United States copyright in the Donkey Kong game. There is no evidence to show that either plaintiff or Nintendo Co., Ltd. ever licensed Falcon to manufacture or sell the Donkey Kong or Crazy Kong games, or their components, in the United States, or to import the games or components in the United States. There is no evidence to show that plaintiff ever licensed anyone to import the games or components into, or produce the games or components in, the United States. During the period of the license agreement, Falcon was a licensee of Nintendo Co., Ltd. for the production rights to the games in Japan and plaintiff was the assignee of Nintendo Co., Ltd. for all rights to the game in the United States.

Beginning in July of 1981, plaintiff began importing Donkey Kong games into the United States. Plaintiff is also manufacturing Donkey Kong games in the United States. As of May 1982, plaintiff had imported, manufactured and sold in the United States over forty-one thousand (41,000) Donkey Kong games. Plaintiff has extensively advertised and promoted Donkey Kong in the United States. It has distributed thousands of brochures for the game

---

1. The Canadian application for registration of copyright for the Donkey Kong game filed by plaintiff states that Mr. Gunpei Yokoi is the author of the game. The evidence shows that Mr. Yokoi is one of the employees of Nintendo Co., Ltd. who did the creative work on the game.

using the name and graphic representations of the visual elements of Donkey Kong and has used these brochures in its advertising in trade publications. In addition, plaintiff has promoted the Donkey Kong game at national and local trade shows. It has also developed and licensed certain promotional items, such as Donkey Kong T-shirts and records. Plaintiff has invested over one million dollars ($1,000,000.00) in the advertising, printing and distribution of brochures and in other marketing expenses for the Donkey Kong game in the United States.

Plaintiff has given notice of its intent to enforce its proprietary interests in Donkey Kong through trade publications whose readership includes manufacturers, distributors and arcade operators of audio-video games. Plaintiff has given notice through these publications that games entitled Crazy Kong infringe upon the Donkey Kong copyright. Through plaintiff's activities, both the trade and the public at large have come to identify the arbitrary, fanciful and distinctive design features of the Donkey Kong games with Donkey Kong, plaintiff and its business. The defendants in this case are not authorized by plaintiff or Nintendo Company, Ltd. to import, manufacture, assemble, distribute or sell Donkey Kong games.

Plaintiff's Donkey Kong audio-video games each include a cabinet containing electronic circuitry and a video picture tube which serves as a screen upon which the visual images of the game are shown. The electronic circuitry is in the form of printed circuit boards and other electronic components which cause the images of each game to be seen on the screen and generate the sounds for the game. The Donkey Kong audio-video game is sold by plaintiff only as a completely integrated game apparatus including a cabinet, video tube and associated video electronics, loudspeaker, harness and internal electronic gameboard, including digital memory chips (called ROMs, PROMs, and EPROMs) which store the instructions that generate the unique video images, sequences, and sounds of the game. The exterior of the game cabinet displays fixed graphics, which are derivations of the fanciful video images that are displayed on the video screen, and such graphics include the trademarks "Nintendo" and "Donkey Kong" that represent the good will of the plaintiff's business.

The Donkey Kong game has the theme of a fanciful gorilla image perched at the top of a building structure where a lady figure is held captive. When it is played, a man figure (called Jump Man) attempts to scale the building structure; in doing so he must dodge various hazards and objects (particularly fireballs and barrels) thrown or launched by the gorilla figure from the top of the building structure. To aid the man figure, there are hammers and other implements which he can use for a short period of time to destroy the various objects thrown by the gorilla. As the man figure gets to the top, a different scene will appear, with some different obstacles. The characters, obstacles, background and name of Donkey Kong are arbitrary, fanciful, and distinctive. The graphic presentation which constitutes Donkey Kong includes nonfunctional design features. Prior to the insertion of a coin, an "attract mode," which plays continuously and automatically in repeating sequence, displays the name of the game Donkey Kong, the copyright notice of Nintendo of America, Inc., and other information and instructions concerning the game. The "attract mode" includes a brief segment of a simulated play mode showing the gorilla figure, building structure, the lady and man figures and the hazards and obstacles encountered by the man figure. After insertion of a coin and during the "play mode," movement of the man figure is partly under the control of the game player who uses a control stick and a pushbutton switch to guide the man figure up the building structure and to avoid the various hazards and obstacles. Musical and other unique sound effects accompany the video presentation.

There have appeared large numbers of counterfeit copies of Donkey Kong on a nationwide scale. Although it is extremely costly and painstaking to develop a printed

circuitboard for an audio-video game, such boards can be copied by others with relative ease and at minimal expense. The Crazy Kong game, including the units distributed, offered for sale and sold by defendants Elcon Industries, Inc. and Andre Dubel, embodies audio-video material (including the characters on the screen and the sound) that is virtually identical with the audio-video material embodied in plaintiff's copyrighted Donkey Kong video game. This virtual identity or substantial similarity includes both the "attract mode" and the "play mode." The Crazy Kong game does not bear Nintendo's name or a copyright notice and has no non-infringing use.

Beginning in November, 1981, and continuing at least into March, 1982, defendant Elcon Industries, Inc. purchased from Arctic International Co. in New Jersey and International Scientific in Fullerton, California printed circuit boards which, with the requisite hardware, would create the audio-video game Crazy Kong. The printed circuit boards used by Elcon Industries which appear to have been manufactured by Falcon, Inc. displayed a sticker in the English language indicating that the board was licensed by Nintendo Co., Ltd. They did not display a copyright notice. Elcon Industries, Inc. purchased the Crazy Kong circuit boards with the intention of assembling them into complete audio-video games and reselling the games for profit. It has distributed, offered for sale and sold numerous units of these games to various customers in the State of Michigan and elsewhere, at least as late as April, 1982. Defendant Elcon Industries, Inc. claims to have stopped sales in April, 1982. Most of these customers have further distributed or sold the games. Defendants Elcon Industries, Inc. and Andre Dubel received specific information that the Crazy Kong games were unauthorized at least as early as March, 1982.

By distributing, offering for sale, and selling Crazy Kong, defendants have induced others to distribute, operate, or publicly perform the game and have materially contributed to such performances in this district and elsewhere in the United States.

The consequence of defendants' conduct is to enable the defendants to trade on the good will and reputation enjoyed by plaintiff in the Donkey Kong game. Defendants have aided and abetted and have otherwise enabled others to purchase, distribute and publicly perform Crazy Kong, creating a false impression to the public that such games are of plaintiff's origin. This conduct of defendants has confused and is likely to continue to confuse the public as to the source of defendant's products, to plaintiff's detriment.

Plaintiff has lost a substantial number of sales of Donkey Kong games, both in this district and elsewhere, because persons have instead purchased infringing games such as Crazy Kong. This has reduced the market share, the market value, and the income-generating potential of genuine Donkey Kong games.

At present Donkey Kong is an extremely popular and commercially successful audio-video game. At various times in the last few months it has been *the most* popular and commercially successful audio-video game in the United States. The commercial life of audio-video games is notoriously short. Despite the tremendous popularity of the Donkey Kong game, most of its sales are likely to occur during the first six to twelve months of its commercial life, and thereafter the game's popularity is expected to drop sharply. The sale of copies of Donkey Kong poses an immediate and serious threat to the plaintiff's business. Plaintiff has received numerous complaints nationwide from both independent distributors and operators of its games that counterfeit Donkey Kong copies are being distributed and operated on location in competition with genuine games, thereby causing damage to its relationship with independent distributors of genuine Nintendo products and operators of such games. Plaintiff is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of defendants' acts. As long as the defendants are permitted to distribute and/or use for profit Crazy Kong or any other pirated Donkey Kong game units,

plaintiff will suffer mounting losses of goodwill and potential sales for which a subsequent award of monetary damages will be inadequate compensation.

*Conclusions of Law*

This matter is before the Court on plaintiff's motion for a preliminary injunction. The Court may issue a preliminary injunction only upon a finding that plaintiff has satisfied the familiar four-prong standard by showing: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable harm unless the activities of the opposing party are enjoined; (3) the harm to it if relief is denied overrides any harm to the defendant if the injunction is issued; and (4) the public interest is served by the issuance of the injunction. *See Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100 (6th Cir.1982); *Mobil Corporation v. Marathon Oil Co.,* 669 F.2d 366 (6th Cir.1981); *Mason. County Medical Ass'n v. Knebel,* 563 F.2d 256 (6th Cir.1977). Plaintiff seeks preliminary injunctive relief based on its claim of copyright infringement in Count I of the complaint and its claim of unfair competition in Count III.

■ The Court concludes that plaintiff has shown a substantial likelihood of success on the merits of its copyright infringement claim under 17 U.S.C. § 101 *et seq.* in Count I. Donkey Kong is a unique and original audio-visual work fixed in a tangible medium of expression and it is a proper subject of copyright protection. This expression includes the characters, obstacles and background as well as the sequence of play of the game. 17 U.S.C. § 102(a), (b), *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607 (7th Cir.1982); *Stern Electronics, Inc. v. Kaufman,* 669 F.2d 852 (2d Cir.1982). Plaintiff's certificate of copyright registration for Donkey Kong establishes a *prima facie* presumption that the copyright is valid and subsisting and that plaintiff is otherwise entitled to the protection afforded by law to the holder of a copyright. 17 U.S.C. § 410(c); *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905 (2d Cir.1980); *Broadcast*

*Music, Inc. v. Moor-Law, Inc.,* 484 F.Supp. 357 (D.Del.1980); *Williams Electronics, Inc. v. Elcon Industries, Inc.,* No. 82–71738 (E.D. Mich. June 1, 1982).

■ The certificate of copyright registration raises only a prima facie presumption that the copyright is valid. If evidence of the invalidity of the copyright is presented, the presumption of validity diminishes. *Gardenia Flowers Inc. v. Joseph Markovitz, Inc.,* 280 F.Supp. 776 (S.D.N.Y.1968). Defendants argue that plaintiff's copyright is invalid for two reasons. First, they assert the copyright is invalid because the license agreement between Nintendo Co., Ltd. and Falcon, Inc. did not require Falcon, Inc. to place a copyright notice on the Crazy Kong games and Falcon, Inc. distributed the games under the agreement without a copyright notice. They contend that the failure to include a copyright notice on the Crazy Kong games is attributable to plaintiff and that the failure to include the copyright notice invalidates the copyright under 17 U.S.C. §§ 401(a), 405. Section 401(a), however, requires that a copyright notice be affixed "Whenever a work protected under this title is published in the United States or elsewhere *by authority of the copyright owner."* (emphasis added). Plaintiff, the owner of the copyright in the Donkey Kong game, did not authorize the publication of the Crazy Kong games, and therefore, cannot lose its rights by the lack of a copyright notice on the games illegally imported. *See* 2 M. Nimmer, *Nimmer on Copyright,* § 7.03 (1982); *Thomas Wilson & Co. v. Irving I. Dorfman,* 433 F.2d 409 (2d Cir.1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1200, 28 L.Ed.2d 326 (1971). In addition, 17 U.S.C. § 602 states:

> Importation into the United States without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under § 106, actionable under § 501.

Because neither plaintiff nor Nintendo Co. Ltd. authorized the importation of the Cra-

zy Kong games into the United States, that importation itself is an infringement of plaintiff's copyright. *Nintendo of America, Inc. v. Falcon Industries, Inc.,* et al., CV 81–6359 RMT, (C.D.Cal. Feb. 12, 1982); *Nintendo of America, Inc. v. Artic International, et al.,* CV 82–631 RMT, C.D.Cal. April 8, 1982); *Nintendo of America, Inc. v. Entertainment Industries, et al.,* CV 82–631 RMT, (C.D.Cal. April 8, 1982); *Nintendo of America, Inc. v. Ingerman, et al.,* No. 82–0937–C(c), (E.D.Mo. June 26, 1982). Second, defendants argue that the copyright is invalid because plaintiff failed to identify the true author of the Donkey Kong game in its application to register a copyright as required by 17 U.S.C. § 409(2). They contend that Ikegami Tsushinki Co., Ltd. must be the author of the Donkey Kong game because the name "Ikegami Co. Lim." appears in the computer program. The evidence shows, however, that Donkey Kong was created by individuals within the research department of Nintendo Co., Ltd. and that Ikegami Tsushinki Co. merely provided technical programming assistance. Plaintiff identified Nintendo Co., Ltd. as the author of the game in its application for copyright registration. Defendants further argue, however, that the copyright registration is invalid because plaintiff's Canadian copyright application identified Gunpei Yokoi, rather than Nintendo Co., Ltd. as the author. They contend that the identification of two different authors creates an issue about the identity of the true author. The evidence shows, however, that Yokoi is one of the employees of the Nintendo Co., Ltd. who did the creative work on the Donkey Kong game. Yokoi's address as disclosed on the Canadian application is the address of Nintendo Co., Ltd. in Japan. Under the Copyright Act, an employer is considered the author of a work prepared by an employee within the scope of his employment. 17 U.S.C. §§ 101, 201(b). The Court concludes that plaintiff complied with all the statutory requirements for a valid copyright in the Donkey Kong game.

■ The Court finds that plaintiff has shown a substantial likelihood of success on its claim that defendants have infringed its copyright in the Donkey Kong game. By showing that defendants distributed, offered for sale and sold for profit audio-video games which embody audio-visual material that is virtually identical to the audio-visual material embodied in plaintiff's copyrighted Donkey Kong game, plaintiff has shown that defendants violated 17 U.S.C. §§ 106(1), (3), (4) and 501. Although defendants contend that the Crazy Kong games do not infringe on plaintiff's copyright because the games were distributed in the United States under the licensing agreement between Nintendo Co., Ltd. and Falcon, Inc., the licensing agreement clearly prohibited Falcon, Inc. from importing or exporting Donkey Kong or Crazy Kong printed circuit boards into the United States. There is no evidence to show that either plaintiff or Nintendo Co., Ltd. ever authorized anyone to import Crazy Kong games into the United States. Defendants' belief that their Crazy Kong games were licensed does not relieve them of liability for violating the copyright laws. *Pye v. Mitchell,* 574 F.2d 476, 481 (9th Cir.1978); *Bell v. Pro Arts, Inc.,* 366 F.Supp. 474 (N.D. Ohio 1973), *aff'd,* 511 F.2d 451 (6th Cir.), *cert. denied,* 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975).

The Court also finds that plaintiff has shown a substantial likelihood of success on its claim of unfair competition in violation of the Michigan common law and the Michigan Consumer Protection Act, M.C.L.A. § 445.901 *et seq.* in Count III of its complaint. Plaintiff has shown that defendants have engaged in acts constituting unfair competition by palming off the Crazy Kong games as products emanating from plaintiff and by misappropriating plaintiff's property in its Donkey Kong audio-video game. *Pennwalt Corp. v. Zenith Laboratories, Inc.,* 472 F.Supp. 413 (E.D.Mich.1978), *app. dismissed,* 615 F.2d 1362 (6th Cir.1980); *Bally Midway Mfg. Co. v. Micropin Corporation d/b/a Elcon Industries and Andre Dubel,* No. 82–71456 (E.D.Mich. July 27, 1982).

Since plaintiff has shown a substantial likelihood of success on its copyright in-

fringement and unfair competition claims, the Court concludes that plaintiff has satisfied the first prong of the four-prong standard for obtaining a preliminary injunction. The Court further concludes that plaintiff has satisfied the other three prongs of that standard. By reason of defendants' acts, plaintiff has sustained and will, unless defendants' conduct is enjoined by this Court, continue to sustain immediate and irreparable substantial injury, loss and damage. Plaintiff is without an adequate remedy at law. *Atari, Inc. v. North American Philips Consumer Electronic Corp.,* 672 F.2d 607, 620 (7th Cir.1982). The balance of equities and hardships strongly favors the issuance of injunctive relief in plaintiff's favor. *Atari, Inc. v. North American Philips Consumer Electronics Corp., supra.* There is a strong public policy in favor of protecting plaintiff's rights, and the interest of nonparties will not be adversely affected by granting the injunctive relief sought. *Atari, Inc. v. North American Philips Consumer Electronics Corp., supra.*

For the foregoing reasons, the Court finds that a preliminary injunction should issue. All items seized by the United States Marshal shall remain in the custody of the Court pending a hearing on the merits. *Duchess Music Corp. v. Stern,* 458 F.2d 1305 (9th Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972). The bond previously posted by plaintiff in connection with the temporary restraining order shall remain in effect with respect to this preliminary injunction.

Therefore, plaintiff's motion for a preliminary injunction will be granted. An appropriate order shall be submitted.