**CURCIO WEBB LLC, Plaintiff,**

v.

**NATIONAL BENEFIT PROGRAMS AGENCY, INC., Defendant.**

No. C2–03–559.

United States District Court,
S.D. Ohio,
Eastern Division.

March 31, 2005.

Joseph William Ryan, Jr., Eric Benjamin Gallon, Karen K. Hammond, Porter, Wright, Morris & Arthur, Columbus, OH, for Plaintiff.

David A. Campbell, III, Douglas Langston Rogers, Vorys, Sater, Seymour & Pease, Columbus, OH, for Defendant.

## *OPINION AND ORDER*

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on Defendant, National Benefit Programs, Inc.'s,[1] ("National Benefit") Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure [Docket No. 15]. For the reasons set forth herein, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

### II. BACKGROUND

#### A. Facts

Plaintiff, Curcio Webb, is a limited liability company organized under the laws of the State of Illinois, and has a place of business in San Francisco, California. Curcio Webb is an employee benefits and

---

1. Defendant avers in its answer that its correct name is National Benefit Programs, Inc. and not National Benefit Programs Agency, Inc., the name that Plaintiff, Curcio Webb LLC, provides in its complaint.

human resources consultant that specializes in assisting companies in selecting providers to administer companies' health, payroll, and other employee benefit plans. Curcio Webb also assists companies with the negotiation of contracts with providers, implementation and management of the companies' benefit plans, and design and selection of technology to manage and monitor benefit plans. Curcio Webb creates and prepares what it deems to be a confidential and proprietary "proposal document" on behalf of each client. These proposal documents help Curcio Webb's clients identify and contract with independent providers to administer, among other things, the company's health and welfare benefit services. The proposal documents also solicit detailed information from various providers and allow Curcio Webb's clients to obtain competitive proposals from providers to administer the company's benefit services.

Curcio Webb expends significant time, effort, and expense in preparing each proposal document. Plaintiff alleges that its proposal document, and in particular the "Scope of Services" section of the document, is the culmination of many years of experience and process improvement. Curcio Webb prepared and distributed a 28–page Proposal Document on behalf of one of its clients in March 2001 ("Plaintiff's Proposal Document"). (Compl.Ex.A) (appearing in redacted form). Plaintiff's Proposal Document was distributed to providers in hard copy and electronic form. Curcio Webb's name and a legal copyright notice appear on each page of Plaintiff's Proposal Document. Curcio Webb owns a registered copyright for Plaintiff's Proposal Document, which is a "work made for hire." (Compl.Ex. C). Curcio Webb is the sole author and owner of Plaintiff's Proposal Document.

Plaintiff's Proposal Document contains a "Use of Information" section on pages 4–5 that sets forth the confidential and proprietary nature of Plaintiff's Proposal Document and restricts the use of that document.[2] On page 2 of Plaintiff's Proposal Document, Curcio Webb includes its contact information, including an e-mail address for one of its principals, Jamie L. Curcio ("jcurcio@curciowebb.com").

National Benefit is an Ohio corporation that has its principal place of business in Columbus, Ohio. National Benefit is an employee benefits consultant, which assists companies in selecting providers to administer companies' health and other employee benefit plans, aids companies in the negotiation of contracts with providers, and assists in the implementation and management of company benefit plans. According to Curcio Webb, National Benefit is a competitor.[3] In November 2002, Defendant prepared and distributed a document on behalf of one of its clients ("Defendant's Proposal Document"). The name, "National Benefit Programs," appears on the bottom of each page of Defendant's Proposal Document. On page 5 of Defendant's Proposal Document, Defendant includes contact information for National Benefit Programs, Inc., including an

---

2. The "Use of Information" section states, in relevant part:

> The work products produced by Curcio Webb for this search are considered proprietary and are fully owned by Curcio Webb, LLC. . . . Providers and their employees are not permitted to use or distribute these work products—even after sanitizing sensitive or [client]-specific information out of them for any purposes other than for this

search. The work products in question, most of which are marked with a copyright notice, include this RFP [Request for Proposal] and any other written materials, regardless of format (e.g.hardcopy, electronic, etc.) produced by Curcio Webb.

(Compl. Ex. A at 5).

3. In its answer, Defendant denies that it is a competitor of Plaintiff. (Def.'s Answer ¶ 16).

e-mail address for Joseph Concheck ("JConcheck@NBPGlobal.com").

Upon reviewing Defendant's Proposal Document in electronic form, Jamie Curcio's e-mail address, "jcurcio@curciow-ebb.com," would appear visible to the user when a user held his computer mouse over "JConcheck@NBPGlobal.com." In fact, when one clicked on the "JConcheck@NBPGlobal.com" hyperlink, a new e-mail message would appear with Jamie Curcio's e-mail address appearing in the "To" section. This would allow the user to e-mail Curcio Webb directly in response to Defendant's Proposal Document.

### B. Procedural History

On June 19, 2003, Plaintiff filed its complaint (the "Complaint") alleging the following claims against Defendant: (1) copyright infringement in violation of 17 U.S.C. § 101 *et seq.;* (2) false designation of origin in contravention of § 43(a) of the Lanham Act of 1946, (codified as amended at 15 U.S.C. § 1125(a)); (3) misappropriation of trade secrets under OHIO REV.CODE § 1333.62 and common law; and (4) unfair competition and misappropriation of proprietary and confidential business information in violation of § 43(a) of the Lanham Act of 1946, (codified as amended at 15 U.S.C. § 1125(a)) and common law. On September 8, 2003, Defendant filed its answer (the "Answer") to the Complaint, in which it generally denied all of Plaintiff's claims and set forth a myriad of affirmative defenses.

On July 9, 2004, Defendant filed its Motion for Judgment on the Pleadings in which it contends, *inter alia,* that Plaintiff is not entitled to "enhanced damages" or attorney's fees in Counts I, II, or IV.[4]

Defendant also moves this Court to dismiss Plaintiff's trade secret misappropriation claim in Count III. In its Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings, Plaintiff asserts that it has not requested several of the remedies that Defendant brings to this Court's attention. Plaintiff asks this Court to deny Defendant's Motion in its entirety, as Defendant "misconstrues legal precedent," and "ignores the policies" underlying the federal and state statutes that Defendant violated. In Defendant's Reply, it maintained that Plaintiff failed to set forth a claim of unfair competition under 15 U.S.C. § 1125(a), and that Plaintiff's common law unfair competition and misappropriation claims were preempted under 17 U.S.C. § 301. Defendant's Motion is now ripe for adjudication.

### III. STANDARD OF REVIEW

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." FED.R.CIV.P. 12(c). Pleadings are considered "closed" once a complaint and answer have been filed. FED.R.CIV.P. 7(a). Here, the Defendant's Answer was filed on September 8, 2003, and the present Motion was filed on July 9, 2004.

■ Where the Rule 12(c) motion is based on the argument that the complaint fails to state a claim upon which relief may be granted, it is judged under the same standard of review as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987) (finding "[w]here the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the stan-

---

4. Count I of Plaintiff's Complaint pertains to Defendant's alleged copyright infringement in violation of 17 U.S.C. § 101 *et seq.* and Plaintiff's petition for injunctive relief and other damages. Count II of the Complaint describes Defendant's alleged false designation

of origin in violation of 15 U.S.C. § 1125(a). In Count IV of the Complaint, it alleges that Defendant engaged in unfair competition and misappropriation in violation of 15 U.S.C. § 1125(a) and common law.

dard for a Rule 12(b)(6) motion in reviewing the district court's decision").

In considering a Rule 12(b)(6) motion to dismiss, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99). Though liberal, this standard of review requires more than the bare assertion of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id.*

## IV. ANALYSIS

### A. Count I—Copyright Infringement under 17 U.S.C. § 101 *et seq.*

Defendant argues that Plaintiff is not entitled to recover either "enhanced damages"[5] or attorney's fees in connection with its copyright infringement claim. Plaintiff retorts that it is seeking neither statutory damages nor attorney's fees under Count I; instead, Plaintiff petitions this Court to grant punitive damages for Defendant's alleged copyright infringement. Given the fact that Plaintiff does not petition the Court for statutory damages or attorney's fees for Defendant's alleged copyright infringement, the Court will focus its analysis of Count I solely on Plaintiff's request for punitive damages.

■ The parties disagree as to whether a plaintiff, in a copyright infringement action may recover punitive damages for the alleged infringement. Defendant argues that Congress did not authorize the award of punitive damages as a remedy for copyright infringement; therefore, such damages may not be awarded to Plaintiff. (Def.'s Mem. Supp. J. Pleadings at 6–7 (citing 17 U.S.C. § 504; *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 431, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir.2001); *Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir.1997))).

Plaintiff, relying upon *TVT Records v. Island Def Jam Music Group*, 262 F.Supp.2d 185 (S.D.N.Y.2003) argues that punitive damages may be available to a plaintiff who sues for copyright infringement when there is evidence of the requisite malice, where the plaintiff would be excluded from receiving statutory damages, or where damages plus profits are an available alternative to statutory damages. (Pl.'s Mem. Opp'n at 5 (citing *TVT*, 262 F.Supp.2d at 187)). Plaintiff also relies on *Bonner v. Dawson*, No. 5:02CV00065, 2003 WL 22432941, *7, 2003 U.S. Dist. LEXIS 19069, at *24 (W.D.Va. Oct. 14, 2003), without further commentary, for the proposi-

---

5. Defendant defines "enhanced damages" as treble damages and punitive damages.

(Def.'s Mem. Supp. J. Pleadings at 1 n. 2).

tion that "punitive damages may be awarded upon a showing of reckless or conscious disregard for the rights of others." (Pl.'s Mem. Opp'n at 5 n. 22 (quoting *Bonner*, 2003 WL 22432941, *7, 2003 U.S. Dist. LEXIS 19069, at *24)).

In its Reply Memorandum, Defendant contends that since 17 U.S.C. § 504 does not include punitive damages, " 'exemplary or punitive damages should not be awarded in a statutory copyright infringement action.' " (Def.'s Reply Mem. at 3 (quoting 4 NIMMER ON COPYRIGHT § 14.02[C][2] at 14–32)). Also, Defendant sets forth two policy arguments that counsel against awarding punitive damages to Plaintiff. First, Defendant claims that the plain language of 17 U.S.C. § 504 does not include punitive damages among available remedies for copyright infringement, and hence, it would be "contrary to the incentives the 1976 Act places on timely registration" to permit Plaintiff to collect punitive damages. (Def.'s Reply Mem. at 3). Specifically, Defendant contends that permitting a plaintiff to collect a separate punitive damages award in addition to actual damages, would essentially allow a plaintiff who does not timely register his work to receive a greater monetary award from an infringing defendant than it would receive if the plaintiff had registered the work in a timely fashion. (Def.'s Reply Mem. at 3). Second, Defendant maintains that because 17 U.S.C. § 301(a) provides that "no person is entitled to any such right or equiva-

lent right in any such work under the common law or statutes of any State," not only are common law copyright infringement claims preempted by the Copyright Act, but also a plaintiff would not be entitled to recover punitive damages based upon a common law copyright infringement claim. (Def.'s Reply Mem. at 3 (quoting 17 U.S.C. § 301(a)).)

Defendant also attacks Plaintiff's reliance upon *TVT* and *Bonner* because, according to Defendant, the cases are neither persuasive nor binding upon this Court.[6] (Def.'s Reply Mem. at 4). According to Defendant, *TVT* is of limited application because although the *TVT* trial court proclaimed "TVT's claims for punitive damages for copyright infringement found to be willful are not precluded as a matter of law and can be presented to the jury," the same court, in a later proceeding, determined that because the plaintiff had elected to recover statutory damages, the court never made a final ruling on the propriety of a punitive damages award. (Def.'s Reply Mem. at 4).

Defendant maintains that *Bonner* is similarly distinguishable because the *Bonner* court acknowledged that 17 U.S.C. § 504(b)[7] is "premised on a theory of restitution and unjust enrichment rather than punishment," and without ruling on the plaintiff's claim for punitive damages, the court stated: "punitive damages may be awarded upon a showing of reckless or

---

**6.** Defendant includes a discussion of *Diaz Vicente v. Obenauer*, 736 F.Supp. 679 (E.D.Va. 1990) in its Reply Memorandum, but Plaintiff does not discuss this case. Plaintiff merely cites to *Obenauer* as the origin of a proposition upon which it relies in its discussion of *Bonner v. Dawson*, 2003 WL 22432941, *7, 2003 U.S. Dist. LEXIS 19069, at *24 (W.D.Va. Oct. 14, 2003).

**7.** 17 U.S.C. § 504(b) states:
The copyright owner is entitled to recover the actual damages suffered by him or her

as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.
*Id.*

conscious disregard for the rights of others." (Def.'s Reply Mem. at 4 (quoting *Bonner*, 2003 WL 22432941, *2, 2003 WL 22432941, at *6–7 (citing *Diaz Vicente v. Obenauer*, 736 F.Supp. 679, 695 (E.D.Va. 1990)))). Defendant concludes that neither the *Bonner* court nor the *Diaz Vicente* case upon which *Bonner* relied, approved an award of punitive damages, and the *Diaz Vicente* court did not address the appropriateness of an award of punitive damages in the copyright infringement context. (Def.'s Reply Mem. at 4–5).

This Court holds that Plaintiff is not entitled to recover punitive damages in connection with its copyright infringement claim. In *Sony*, the United States Supreme Court stated that "the remedies for infringement are only those prescribed by Congress." *Sony*, 464 U.S. at 431, 104 S.Ct. 774. Punitive damages is not a remedy listed in Section 504 of the Copyright Act, and hence, Congress has not prescribed it as an appropriate remedy for copyright infringement. *See* 17 U.S.C. § 504 (describing the available remedies for copyright infringement, but not providing for punitive damages). Also, in

*Wrench*, the Sixth Circuit specifically identified the remedies for copyright infringement, but it did not include punitive damages. *Wrench*, 256 F.3d 446, 457 ("Under the Copyright Act, remedies for infringement are limited to injunctions; impounding and destruction of infringing articles; recovery of the copyright owner's actual damages and any additional profits of the infringer or statutory damages; and costs and attorneys fees.") (citing 17 U.S.C. §§ 502, 503, 504, and 505). Finally, in Nimmer on Copyright, the treatise authors state: "The cases are clear that exemplary or punitive damages should not be awarded in a statutory copyright infringement action." 4 NIMMER ON COPYRIGHT § 14.02[C][2], at 14–32.[8]

Accordingly, Defendant's Motion with respect to Count I (copyright infringement) of Plaintiff's Complaint is **GRANTED.**

### B.  Count II—False Designation of Origin under 15 U.S.C. § 1125(a)[9]

Next, Defendant contends that Plaintiff is not entitled to recover either attorney's

---

**8.**  4 Nimmer on Copyright § 14.02[C][2] cites several cases in which federal courts have considered the availability of punitive damages in copyright infringement actions, including *Bell v. Pro Arts, Inc.*, 366 F.Supp. 474, 485 (N.D.Ohio 1973). *Id.* at 14–32 through 14–33 n. 176. In *Bell*, the court determined that "[u]nder appropriate circumstances, punitive or exemplary damages may be awarded in copyright actions." *Id.* at 485 (citation omitted). Nevertheless, the trial court did not award punitive damages because it concluded that the circumstances of the case did not "necessitate" or "require" an award of punitive damages. *Id.* On appeal, the Sixth Circuit affirmed the lower court's decision, but it did not address the propriety of punitive damages presumably because the district court did not assess that remedy. *Bell v. Pro Arts, Inc.*, 511 F.2d 451 (6th Cir.1975). It is essential to note, however, that *Bell* preceded the enactment of the Copyright Act of 1976, and thus, the district court did not expound upon

the suitability of a punitive damages award under the Copyright Act of 1976.

**9.**  In its Motion, Defendant states:

There is no allegation in the Complaint that Defendant used whatever symbol Plaintiff claims as a mark as a trademark, so the trademark infringement claims also fail on this ground. *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F.Supp.2d 734, 762 (E.D.Mich.2003), citing *Bird v. Parsons*, 289 F.3d 865, 877–878 (6th Cir.2002), for the proposition that 'when a domain name is used to indicate an address on the Internet, and not to identify the source of goods and services, it is not functioning as a trademark.'

(Def.'s Mem. Supp. J. Pleadings at 7 n. 13). Barring a passing reference to Jamie Curcio's e-mail address, which Defendant classifies as a "public address like a street address" and not a trade secret, Defendant includes no

fees or enhanced damages in connection with Count II, its false designation of origin claim under 15 U.S.C. 1125(a), because Plaintiff fails to allege that Defendant's acts were "willful." [10] (Def.'s Mem. Supp. J. Pleadings at 8).

### 1. Attorney's Fees

Defendant asserts that if a court does not determine that a defendant's trademark infringement is "malicious," "willful," "fraudulent," or "deliberate," then an attorney's fees award is unwarranted. (Def.'s Mem. Supp. J. Pleadings at 8 (citing *Frisch's Rests., Inc. v. Elby's Big Boy,* 849 F.2d 1012, 1017 (6th Cir.1988))). Additionally, Defendant relies on *Gorenstein Enterprises, Inc. v. Quality–Care–USA, Inc.,* 874 F.2d 431, 436 (7th Cir.1989) to argue that the Seventh Circuit permits a plaintiff's recovery of attorney's fees under 15 U.S.C. § 1117(a) only when the defendant's trademark infringement is "deliberate." (Def.'s Mem. Supp. J. Pleadings at 8 (emphasis added)).

Although Plaintiff concedes that this Court may not award attorney's fees in the absence of a finding that Defendant's ac-

tions were willful,[11] Plaintiff maintains that it makes the appropriate allegations respecting Defendant's willful conduct, and thus, it is not precluded from pursuing its recovery of attorney's fees. (Pl.'s Mem. Opp'n at 6). According to Plaintiff, it pleads allegations respecting Defendant's willful conduct in its "Nature of the Action" section of its Complaint, and in Counts III and IV. (Pl.'s Mem. Opp'n at 6). Under the "Nature of Action" section of the Complaint, Plaintiff alleges that Defendant "falsely designated the origin of [its] products and services in a fashion that is likely to cause confusion, mistake, or deceive consumers as to the origin, sponsorship, or affiliation of Defendant's products and services." (Compl.¶ 4). In Count III, Plaintiff asserts that Defendant's misappropriation of trade secrets was "willful and malicious." (Compl.¶ 41). In Count IV, Plaintiff avers that "Defendant's access to, or ability to gain access to, Plaintiff's Proposal Document accelerated Defendant's ability to enter the marketplace with respect to Fortune 100 companies." (Compl.¶ 43).[12] Consequently, Plaintiff, relying upon FED.R.CIV.P. 8(f),[13] and this

---

additional discussion of whether Defendant used Plaintiff's "symbol" or "mark" as a trademark. (Def.'s Reply Mem. at 6). Plaintiff, in its Memorandum in Opposition, does not address Defendant's contention that Plaintiff's trademark infringement claims fail because Plaintiff has not alleged that Defendant used its "symbol" or "mark" as a trademark. (See generally Pl.'s Mem. Opp'n at 5–8 for a discussion of Plaintiff's perspective on when a court may award attorney's fees and enhanced damages for trademark infringement). In the absence of further discussion by the parties, the Court declines to decide this issue at the judgment on the pleadings phase of litigation.

**10.** In its Motion, Defendant also claims that Plaintiff cannot recover damages for "trademark counterfeiting." (Def.'s Mem. Supp. J. Pleadings at 8–9). In its Memorandum in Opposition, Plaintiff asserts that it does not allege trademark counterfeiting. (Pl.'s Mem. Opp'n at 6). Hence, the Court will confine its

analysis of Count II to the issues of whether Plaintiff may recover attorney's fees and/or enhanced damages.

**11.** In conceding this point, Plaintiff cites *Eagles, Ltd. v. American Eagle Foundation,* 356 F.3d 724, 728 (6th Cir.2004) (quoting *Hindu Incense v. Meadows,* 692 F.2d 1048, 1051 (6th Cir.1982)) and *United States Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1192 (6th Cir.1997).

**12.** In its Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings, Plaintiff described Defendant's alleged unfair competition and misappropriation, the claims which form the basis of Count IV, as conduct for the "specific purpose of obtaining Fortune 100 companies as clients." (Pl.'s Mem. Opp'n at 6–7).

**13.** Rule 8(f) states: "All pleadings shall be so construed as to do substantial justice." FED. R.CIV.P. 8(f).

Court's discussion of FED.R.CIV.P. 12(c),[14] concludes that its Complaint satisfies the pleading requirements imposed by the Federal Rules of Civil Procedure, and it has appropriately alleged that Defendant's actions, with respect to Count II (false designation of origin), were willful. (Pl.'s Mem. Opp'n at 7).

Defendant's reply is two-pronged. First, Defendant argues that Plaintiff fails to allege that when Defendant distributed its Proposal Document, it willfully deceived customers as to the origin of that document by virtue of its inclusion of Jamie Curcio's embedded e-mail address. (Def.'s Reply Mem. at 5–6). Second, Defendant argues that because Plaintiff does not allege that Defendant's conduct was willful in Count II (false designation of origin), it attempts to cure this "deficiency" by referring to the allegations it makes against Defendant in Counts III (trade secret misappropriation) and IV (unfair competition and misappropriation).[15] (Def.'s Reply Mem at 6). Essentially, Defendant claims that because neither Count III nor IV discusses Defendant's alleged false designation of origin, Plaintiff cannot rely on allegations of willfulness in either of those counts to remedy its failure to aver Defendant's willful conduct in Count II. Ultimately, Defendant contends that even if Plaintiff prevailed on Count II (false designation of origin), this Court is not empowered to award Plaintiff attorney's fees since Plaintiff, at no time, alleges that Defendant willfully included a hyperlink to Jamie Curcio's e-mail address in its Proposal Document. (Def.'s Reply Mem. at 7).

■ Once a plaintiff establishes a violation under 15 U.S.C. § 1125(a), Congress permits the award of attorney's fees to a prevailing party in "exceptional" cases. 15 U.S.C. § 1117(a). The parties do not dispute the fact that in the Sixth Circuit, a case is not deemed to be "exceptional" unless " 'the infringement was malicious, fraudulent, willful, or deliberate.' " *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir.2004) (quoting *Hindu Incense v. Meadows*, 692 F.2d 1048, 1051 (6th Cir.1982)); *see Frisch's Rests., Inc. v. Elby's Big Boy*, 849 F.2d 1012, 1017 (6th Cir.1988) ("We do not think this case is 'exceptional' within the meaning of the statute. The District Court held that the infringement was not malicious, willful, fraudulent, or deliberate. Therefore, the Court was correct to deny an award of attorneys' fees.") (quoting *Hindu*, 692 F.2d at 1051–52). The parties, however, disagree as to whether Plaintiff alleges Defendant's willful false designation of origin under Count II of the Complaint.

■ In Count II, Plaintiff never expressly refers to any of Defendant's conduct as "willful," nor does it aver that Defendant's conduct was malicious or deliberate. Plaintiff's allegations in Paragraph 33 of the Complaint, which purport to set forth the elements of the claim, fail to adduce facts sufficient to create an inference of willfulness, or to otherwise meet the standard for attorney's fees set forth by *Eagles, Ltd.* Moreover, in the "Nature of the Action" section of Plaintiff's Complaint, Plaintiff claims that "Defendant has *falsely* designated the origin of Defen-

---

**14.** In *Foster v. D.B.S. Collection Agency*, No. 01–CV–514, 2002 U.S. Dist. LEXIS 27366, at *11 (S.D.Ohio Mar. 8, 2002), this Court stated that when ruling on a FED.R.CIV.P. 12(c) motion, the Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Id.* (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**15.** Defendant concedes that Plaintiff includes a willfulness allegation in Count III of the Complaint, but disputes that Count IV contains such an allegation. (Def's Reply Mem. at 6).

dant's products and services in a fashion that is likely to cause confusion, mistake or deceive consumers as to the origin, sponsorship or affiliation of Defendant's products and services," yet the Complaint is bereft of a factual basis from which to infer willfulness. The mere fact that Defendant's designation was false does not lead to the inexorable conclusion that the false designation was willful. Finally, the allegations of willfulness appearing in Count III do not cure the deficiency of Count II.[16] The allegations in Count III relate to the claims raised therein and cannot be "borrowed" to buttress Count II. If Plaintiff believed that Defendant's actions underlying the false designation of origin claim were willful, then Plaintiff should have pleaded that fact, as it did in Count III.

Accordingly, there is no factual basis for an inference that Defendant has deliberately or willfully engaged in false designation of origin because Defendant distributed its Proposal Document, which contained a hyperlink to Jamie Curcio's e-mail address, thereby permitting a recipient to contact directly Curcio Webb regarding Defendant's Proposal Document. Based upon this record and the absence of any allegation of willfulness, Defendant's Motion with respect to Plaintiff's request for attorney's fees under Count II (false designation of origin) of its Complaint, is **GRANTED.**

### 2. *Enhanced Damages* [17]

■ Defendant maintains that because Plaintiff has not alleged willful trademark infringement under Count II (false designation of origin), it is not entitled to enhanced damages as provided in Section 1117(a). (Def.'s Mem. Supp. J. Pleadings at 8). Defendant acknowledges that as long as enhanced damages are compensatory, they are permitted under 15 U.S.C. § 1117(a). (Def.'s Mem. Supp. J. Pleadings at 8). Plaintiff argues that it may recover enhanced damages without this Court's finding that Defendant's actions were willful, and that Defendant's statement to the contrary is "unsupported by controlling precedent." (*See* Pl.'s Mem. Opp'n at 7 n. 35). Plaintiff also contends that in this Circuit, Section 1117 grants a district court substantial discretion to fashion appropriate remedies. (Pl.'s Mem. Opp'n at 7 (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir.1997) (citing *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed.Cir.1984)))).

In its Reply Memorandum, Defendant acknowledges that the "treble damages" clause of 15 U.S.C. § 1117(a) does not expressly require a showing of willfulness in order for a plaintiff to recover enhanced damages (Def.'s Reply Mem. at 7). Defendant contends, however, that because Section 1117(a) states that the enhanced damages "shall constitute compensation and not a penalty," [18] Plaintiff must aver that

---

**16.** As stated above, Plaintiff and Defendant disagree as to whether Count IV contains a willfulness allegation. The allegation of willfulness in Count III, however, is not in dispute. (Def's Reply Mem. at 6).

**17.** Defendant, in its Memorandum in Support of Motion for Judgment on the Pleadings argues that Plaintiff may not recover punitive damages under 15 U.S.C. § 1117(a). (Def.'s Mem. Supp. J. Pleadings at 7). Plaintiff, in its Memorandum in Opposition contends that it does not request such damages under Count II (false designation of origin), and it con-

cedes that punitive damages are not an available remedy under Section 1117(a). (Pl.'s Mem. Opp'n at 8). Thus, the Court's discussion of "enhanced damages" under Count II is restricted to the treble damages remedy under Section 1117(a).

**18.** Defendant relies on a host of federal court decisions for the proposition that a finding of willfulness is a condition precedent to a court's award of enhanced damages for false designation of origin. (Def.'s Reply Mem. at 7–9) (citing *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir.

Defendant's alleged trademark infringement is willful.[19]  (Def.'s Reply Mem. at 7–9 (quoting 15 U.S.C. § 1117(a))).  Finally, Defendant argues that because Plaintiff has not alleged that Defendant's trademark infringement is willful, it is not entitled to enhanced damages with respect to Count II (false designation of origin). (Def.'s Reply Mem. at 9–10).

This Circuit has not *definitively* stated that an award of enhanced damages pursuant to 15 U.S.C. § 1117 necessitates a finding of willful infringement.  In its Reply Memorandum, Defendant, relying on *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185 (6th Cir.1997), noted that the district court "found that Defen-

dants' infringement was willful, deliberate and intentional," and that the Sixth Circuit affirmed the district court's award of enhanced damages.  (Def.'s Reply Mem. at 8 (quoting *U.S. Structures*, 130 F.3d at 1188, 1191–92)) (internal quotation marks deleted).  Defendant, however, fails to mention that the Sixth Circuit's statement was made in the context of the district court's award of attorney's fees and not with respect to an award of enhanced damages (treble damages).  *See id.* at 1188 ("*With regard to the award of attorneys' fees,* the court found that defendants' infringement was 'willful, deliberate, and intentional.' ") (emphasis added).  In fact, the *U.S. Structures* court never addressed the issue of

1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *SecuraComm Consulting, Inc. v. Securacom, Inc.,* 166 F.3d 182, 186 (3d Cir.1999); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1127 (5th Cir.1991), *aff'd,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Gorenstein Enters. Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436 (7th Cir.1989); *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185 (6th Cir.1997); *Am. Express Co. v. Lipscomb,* No. 79–72892, 210 U.S.P.Q. 827, 833, 1981 WL 40529, 1981 U.S. Dist. LEXIS 15049, at *14 (E.D.Mich. Jan.12, 1981), *aff'd,* 663 F.2d 1070 (6th Cir.1981), *cert. denied,* 454 U.S. 901, 102 S.Ct. 406, 70 L.Ed.2d 218 (1981); *Sun Prods. Group, Inc. v. B & E Sales Co., Inc.,* 700 F.Supp. 366, 386 (E.D.Mich.1988)).

The Court notes that the Third Circuit has recently held that its *SecuraComm* decision has been superceded by the August 1999 amendment to the Lanham Act. *See Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 173–76 (3d Cir.2005) (discussing the defendant's contention that *SecuraComm* requires a plaintiff to prove that an infringer committed willful trademark infringement in order for the plaintiff to recover an infringer's profits, but holding that Section 1117(a), as amended in August 1999, superceded *Securacomm,* and evinces a clear intention by Congress to not condition monetary awards under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act) on a showing of willfulness).  Because the *Renosky* court considered the impact of the August 1999 amendment on an award of an

infringer's profits, and not with regard to an award of treble damages, it is unclear whether the August 1999 amendment supercedes court decisions that require a finding of willful trademark infringement before a court may treble a plaintiff's actual damages.

19.  Defendant also relies upon McCarthy on Trademarks and Unfair Competition for the proposition that the phrase "not a penalty," which appears in 15 U.S.C. § 1117(a), "authorizes 'the judicial increase of damages or profits to deter willful infringement so long as there is some "remedial" aspect of the increase.' "  (Def.'s Reply Mem. at 7 (quoting 5 McCarthy on Trademarks and Unfair Competition, § 30:91, at 30–166)).  In this quoted passage of McCarthy on Trademarks and Unfair Competition, the treatise author discusses the Second Circuit's analysis of the Lanham Act's "not a penalty" language.  *Id.* Contrary to Defendant's intimation, the treatise author does not suggest that the "not a penalty" language should be interpreted to permit "the judicial increase of damages or profits to deter willful infringement so long as there is some 'remedial' aspect of the increase."  *Id.* The Court further notes that, according to the treatise author, the effect of the phrase "shall constitute compensation and not a penalty" in Section 1117 is "unclear," but courts who have increased actual damages usually rely on "some variation of the 'knowing and willful' infringement theme."  *Id.* at 30–164 through 30–165.

whether a finding of willful trademark infringement must precede a court's award of enhanced damages. *See U.S. Structures*, 130 F.3d at 1191–92 (finding that the district court "did not err in computing damages as an amount equal to four times actual damages," but not addressing or requiring a showing of willfulness before a plaintiff is entitled to recover enhanced damages).

The court in *American Express Co. v. Lipscomb*, No. 79–72892, 210 U.S.P.Q. 827, 833, 1981 WL 40529, 1981 U.S. Dist. LEXIS 15049, at *14 (E.D.Mich. Jan.12, 1981), *aff'd*, 663 F.2d 1070 (6th Cir.1981), *cert. denied*, 454 U.S. 901, 102 S.Ct. 406, 70 L.Ed.2d 218 (1981), renders Defendant's proposition more compelling. In *American Express*, the plaintiff filed a motion for summary judgment *alleging* that the defendants "deliberately designed and sold their 'International American Express Company' sight drafts to trade on the goodwill of the plaintiff and to confuse potential purchasers of plaintiff's travelers cheques, in violation of state and federal law." *American Express*, 210 U.S.P.Q. 827, 830–31, 1981 WL 40529, 1981 U.S. Dist. LEXIS 15049, at *5. Consequently, the district court held that defendant Lipscomb had engaged in a "willful and deliberate scheme" of trademark infringement and unfair competition. *Id.*, 210 U.S.P.Q. 827, 833, 1981 WL 40529, 1981 U.S. Dist. LEXIS 15049, *14. The court reasoned that 15 U.S.C. § 1117 "authorizes extraordinary damages in certain circumstances, as where the defendant acted intentionally and fraudulently." *Id.*, 210 U.S.P.Q. 827, 834–35, 1981 WL 40529, 1981 U.S. Dist. LEXIS 15049, *16 n. 6.[20] This Court recognizes that *American Express* does not explicitly state that a plaintiff alleging false designation of origin under 15 U.S.C. § 1125(a) is required to plead willful trademark infringement in order to recover enhanced damages under Section 1117(a); however, this Court reads it to require a plaintiff to include at least some allegation of willfulness in its complaint before enhanced damages under Section 1117(a) can be awarded. Count II is simply devoid of any language from which an allegation of willfulness can be inferred.

Based on the foregoing reasons, Defendant's Motion with respect to Plaintiff's request for treble damages under Count II (false designation of origin) of its Complaint is **GRANTED**.

## C. Count III—Misappropriation of Trade Secrets under Ohio Rev.Code § 1333.61 *et seq.* and Common Law[21]

■ Under Ohio's version of the Uni-

---

**20.** The Sixth Circuit, without opinion, affirmed the decision of the lower court. *Am. Express Co. v. Lipscomb*, 663 F.2d 1070 (6th Cir.1981).

**21.** Section 1333.67 of the Ohio Revised Code provides:

(A) Except as provided in division (B) of this section, Sections 1333.61 to 1333.69 of the Revised Code displace conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.

(B) Sections 1333.61 to 1333.69 of the Revised Code do not affect any of the following:

(1) Contractual remedies, whether or not based on misappropriation of a trade secret;

(2) Other civil remedies that are not based on misappropriation of a trade secret;

(3) Criminal remedies, including those in other sections of this chapter, whether or not based on misappropriation of a trade secret.

OHIO REV.CODE § 1333.67. In *Glasstech, Inc. v. TGL Tempering Systems, Inc.*, 50 F.Supp.2d 722 (N.D.Ohio 1999), the court stated: "[t]he preemption section of the UTSA [Uniform Trade Secrets Act] has been interpreted to bar claims which are based entirely on factual allegations of misappropriation of trade secrets." *Id.* at 730 (citing *Powell Prods., Inc. v.*

form Trade Secrets Act, a party seeking trade secret protection must demonstrate that the purported trade secret: "(1) has independent economic value, (2) is not generally known or readily ascertainable by independent means, and (3) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Hoffmann–La Roche, Inc. v. Yoder*, 950 F.Supp. 1348, 1365 (S.D.Ohio 1997); *Kenker Box Co. v. Riemeier Lumber Co.*, Nos. C–990803, C–990824, 2000 WL 1886632, **3–4, 2000 Ohio App. LEXIS 6198, at

*Marks*, 948 F.Supp. 1469, 1474–75 (D.Colo. 1996); *Smithfield Ham and Prods. Co. v. Portion Pac, Inc.*, 905 F.Supp. 346, 348 (E.D.Va. 1995); *Coulter Corp. v. Leinert*, 869 F.Supp. 732 (E.D.Mo.1994)). The *Glasstech* court determined that because the plaintiff's common law claims for misuse and misappropriation of trade secrets were " 'no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret appropriation,' " such claims were preempted under Ohio's version of the Uniform Trade Secrets Act. *Id.* (quoting *Powell*, 948 F.Supp. at 1474).

In the case sub judice, Plaintiff asserts statutory and common law misappropriation of trade secrets claims against Defendant in Count III. Plaintiff asserts the same operative facts for both claims, and the Complaint contains no allegations suggesting that Plaintiff's common law misappropriation claim would not be displaced by virtue of 1333.67(B). Accordingly, OHIO REV.CODE § 1333.67 appears to preempt Plaintiff's common law misappropriation of trade secrets claim, and thus, the Court's Count III discussion is limited to Plaintiff's statutory misappropriation of trade secrets claim.

22. The Ohio Revised Code defines "trade secret" as:

[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

*10–11 (Ohio Ct.App. Dec. 29, 2000) (citing OHIO REV.CODE § 1333.61(D))).

In its Motion, Defendant urges this Court to dismiss Plaintiff's trade secret[22] misappropriation[23] claim with prejudice. First, Defendant argues that Plaintiff's alleged trade secret is a "bid document," which is not a recognized trade secret under *State ex rel. Plain Dealer v. The Ohio Department of Insurance*, 80 Ohio St.3d 513, 687 N.E.2d 661 (1997). (Def.'s Mem. Supp. J. Pleadings at 9 (quoting *Plain Dealer*, 687 N.E.2d at 673 ("Documents pertaining to draft contracts, bids,

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

OHIO REV.CODE § 1333.61(D).

23. The Ohio Revised Code defines "misappropriation" as any of the following:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

(a) Used improper means to acquire knowledge of the trade secret;

(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

OHIO REV.CODE § 1333.61(B).

and letters of negotiation are not trade secrets."))). Second, Defendant asserts that Plaintiff cannot prevail on its trade secret misappropriation claim because Plaintiff placed its Proposal Document in the public domain when it attached the document to the Complaint. (Def.'s Mem. Supp. J. Pleadings at 9–10 (relying on *Yoder*, 950 F.Supp. at 1360–61, for the proposition that a party who does not take reasonable steps to guard the secrecy of a document may not avail itself of trade secret protection under Ohio law)). Finally, Defendant disputes Plaintiff's classification of its Proposal Document as a trade secret prior to the time Plaintiff filed the Complaint. (Def.'s Mem. Supp. J. Pleadings at 10 n. 16).

In response, Plaintiff distinguishes its Proposal Document from the bid documents described in *Plain Dealer*, arguing that those bid documents were merely "related to a single, ephemeral event in the conduct of a business," while its Proposal Document constitutes " 'a process or device for continuous use in the operation of the[ ] business.' " (Pl.'s Mem. Opp'n J. Pleadings at 9–10 (quoting *Plain Dealer*, 687 N.E.2d at 673)).

With regard to Defendant's public domain argument, Plaintiff concedes that its Proposal Document is not a trade secret currently, but attributes this fact to Defendant's alleged plagiarism and subsequent public distribution of Plaintiff's Proposal Document. (Pl.'s Mem. Opp'n J. Pleadings at 9). Plaintiff asserts that it had little to lose when it appended its Proposal Document as an exhibit to the Complaint.[24] (Pl.'s Mem. Opp'n J. Pleadings at 9). Defendant characterizes Plaintiff's argument that its Proposal Document is no longer a trade secret as "inconsistent" with Plaintiff's request that Defendant be enjoined from further trade secret misappropriation.[25] (Def.'s Reply Mem. at 10).

■ The Court finds Defendant's contentions unavailing. First, Plaintiff offers evidence sufficient to rebut Defendant's assertion that Plaintiff's Proposal Document is a "bid document," and hence, is not entitled to trade secret protection.[26] Plaintiff's most compelling argument is that its Proposal Document contains information and elements that the company has used repeatedly in previous and subsequent Proposal Documents. (Pl.'s Mem. Opp'n J. Pleadings at 10). If true, then Plaintiff's Proposal Document does not appear to constitute "[i]formation related to a single, ephemeral event in the conduct of a business [, which] does not meet the requirement that a trade secret be 'a process or device for continuous use in the operation of the[ ] business.' " *Plain Dealer*, 687 N.E.2d at 673 (citation omitted).

■ Second, the Court is unpersuaded that Plaintiff has waived any right to sue Defendant for its alleged trade secret misappropriation. The Supreme Court of Ohio has declared that "the question of whether a particular knowledge or process is a trade secret is a question of fact to be determined by the trier of fact upon the

---

**24.** Plaintiff acknowledges that information pertinent to the client for which the Proposal Document was prepared cannot be afforded trade secret protection, but it nonetheless asserts that the remainder of the document is entitled to trade secret protection under Ohio law. (Pl.'s Mem. Opp'n J. Pleadings at 10).

**25.** Defendant points out that in paragraph 1c. of the Prayer for Relief section of the Complaint, Plaintiff petitions this Court to enjoin Defendant from "[d]isclosing or using Plaintiff's Proposal Document or any of Curcio Webb's confidential, proprietary, or trade secret information" on a permanent basis. (Def.'s Reply Mem. at 10).

**26.** The Court expresses no view on Plaintiff's argument that its Proposal Document is not a "negotiation document[ ][for] a sale." (Pl.'s Mem. Opp'n J. Pleadings at 9 (quoting *Plain Dealer*, 687 N.E.2d at 673)).

greater weight of the evidence." *Valco Cincinnati, Inc. v. N & D Machining Service, Inc.,* 24 Ohio St.3d 41, 492 N.E.2d 814, 819 (1986); *see Yoder,* 950 F.Supp. at 1357 (adopting the *Valco* court's statement regarding a trier of fact's determination of trade secret status). Accordingly, this Court declines to decide at this stage of the litigation whether Plaintiff's Proposal Document was at some time a trade secret. The Court notes, however, that in Count III of the Complaint, Plaintiff states: "Curcio Webb took reasonable precautions to protect the security and secrecy of Plaintiff's Proposal Document, to ensure that it was not generally known or readily obtainable by the general public, and to prevent its misappropriation. Plaintiff's Proposal Document had independent economic value to Curcio Webb." (Compl.¶¶ 37–38). Therefore, Plaintiff has alleged each of the statutory trade secret protection elements.

Although Defendant cites authority for the proposition that documents in the public domain are not afforded trade secret protection, the Court is not persuaded that a plaintiff who attaches a document containing an alleged trade secret to its complaint utterly destroys any claim it may have had at some moment in time for trade secret misappropriation. Defendant's argument, while artful, simply is untenable. Defendant ignores Plaintiff's temporal argument, the basis of which is that even if Plaintiff's Proposal Document is no longer entitled to trade secret protection, it was entitled to such protection before Defendant allegedly misappropriated it.[27] Although it is true that Plaintiff claimed trade secret protection for a document that it has since admitted is no long-

er valued as a trade secret, Plaintiff's temporal argument is viable because Plaintiff may be able to prove that its Proposal Document had trade secret protection at the time of Defendant's alleged misappropriation.

Furthermore, in discussing Plaintiff's request for injunctive relief in paragraph 42 of the Complaint, Defendant does not acknowledge the fact that Plaintiff seeks compensatory and punitive damages, in addition to attorney's fees pursuant to Sections 1333.63 and 1333.64 of the Ohio Revised Code. Hence, even if this Court were to deny Plaintiff injunctive relief, Plaintiff, at least in theory, could still recover compensatory and punitive damages, in addition to attorney's fees if it proves that Defendant misappropriated Plaintiff's Proposal Document before the document lost its purported trade secret status. (Pl.'s Mem. Opp'n J. Pleadings at 9).

Indeed, in paragraph 1c. of Plaintiff's Prayer for Relief, Plaintiff requests that this Court permanently enjoin Defendant from "[d]isclosing or using Plaintiff's Proposal Document or any of Curcio Webb's confidential, proprietary, or trade secret information." (Compl.¶ 1c.). Nevertheless, the Court finds that though Plaintiff would likely not be entitled to a permanent injunction with respect to its Proposal Document because that document is no longer a trade secret, if Defendant currently possesses other confidential, proprietary, or trade secret information, this Court would be empowered to enjoin Defendant from disclosing or using such information on a permanent basis.

Based on the foregoing reasons, Defendant's Motion with respect to dismissal of

---

**27.** In its Motion, Defendant disputes that Plaintiff's Proposal Document was a trade secret prior to the time that Plaintiff filed the Complaint, but claimed that this issue need not be addressed at this time. (Def.'s Mem. Supp. J. Pleadings at 10 n. 16; see also Def.'s

Reply Mem. at 11 n. 17 (stating whether Plaintiff's Proposal Document was a trade secret at the time of Defendant's alleged misappropriation is irrelevant for purposes of Defendant's Motion)).

Plaintiff's statutory trade secret misappropriation claim under Count III of the Complaint, is **DENIED.**

### D. Count IV—Unfair Competition and Misappropriation under 15 U.S.C. § 1125(a) and Common Law

■ In its Motion for Judgment on the Pleadings, Defendant contends that although it does not understand what Plaintiff's position is in Count IV (unfair competition and misappropriation), Plaintiff is not entitled to recover either attorney's fees or punitive damages. (Def.'s Reply Mem. at 11, 13). Yet, in its Reply Memorandum, Defendant crafts additional arguments regarding Count IV, which the Court finds necessary to address prior to its consideration of Plaintiff's right to recover attorney's fees and/or punitive damages.[28]

First, according to Defendant, Plaintiff's assertion that its unfair competition and misappropriation claims are derived from Defendant's alleged copying of Plaintiff's Proposal Document does not create a basis for a Lanham Act claim. (Def.'s Reply Mem. at 12). Defendant argues that, based on *Bird v. Parsons,* 289 F.3d 865 (6th Cir.2002), " 'the key question in cases where a plaintiff alleges trademark infringement [15 U.S.C. § 1114] and unfair competition [15 U.S.C. § 1125(a) ] is whether the defendant's actions create a likelihood of confusion as to the origin of the parties' goods or services.' " (Def.'s Reply Mem. at 12 (quoting *Bird,* 289 F.3d at 877)). If it is Plaintiff's position that Defendant used Plaintiff's Proposal Document to design Defendant's Proposal Document, and Defendant gained an "unfair advantage" in violation of 15 U.S.C. § 1125(a), then Defendant asserts that Plaintiff has not alleged confusion or likelihood of confusion in Count IV (unfair competition and misappropriation).[29] (Def.'s Reply Mem. at 12 (citing *McCoy v. Mitsuboshi Cutlery, Inc.,* 67 F.3d 917, 923 (Fed. Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1268, 134 L.Ed.2d 215 (1996) (stating that an infringer's liability for unfair competition and trademark infringement hinges on likelihood of confusion); *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,* 78 F.3d 1111, 1123 (6th Cir. 1996) (holding that likelihood of confusion is the "essence" of an unfair competition, as in trademark infringement actions))) (citation omitted). Consequently, Defendant contends that Plaintiff fails to state a claim for relief, and therefore, is not entitled to enhanced damages[30] or attorney's fees.[31]

---

**28.** "It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition." *In re: Firstenergy Corp. Sec. Litig.,* 316 F.Supp.2d 581, 599 (6th Cir.2004) (citing *United States v. Campbell,* 279 F.3d 392, 401 (6th Cir.2002) (quoting *United States v. Crozier,* 259 F.3d 503, 517 (6th Cir.2001))); *See Campbell,* 279 F.3d at 401 ("We have held that 'the appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in an appellee's brief."). The Court finds that Defendant's arguments of "unfair advantage," likelihood of confusion, and federal copyright preemption of certain state law claims as raised in Defendant's Reply Memorandum are in response to Plaintiff's characterization of Count IV (unfair competition and misappropriation) in its Memorandum in Opposition—a characterization that did not appear in Plaintiff's Complaint.

**29.** Presumably Defendant's argument is in response to the following statement that Plaintiff made in its Memorandum in Opposition: "Curcio Webb believes NBP copied Curcio Webb's Request for Proposal in order to accelerate NBP's ability to handle and attract as clients large, successful, Fortune 100 companies—a significant target market for Curcio Webb." (Pl.'s Mem. Opp'n at 5–6).

**30.** In paragraph 45 of its Complaint, Plaintiff does not specifically request treble damages. (Compl.¶ 45). In paragraph 5 of the Prayer for Relief section of the Complaint, however, Plaintiff petitions this Court to treble its dam-

■ As a threshold matter, the Court will examine Plaintiff's federal unfair competition claim to determine if Plaintiff states a claim under 15 U.S.C. § 1125(a). A plaintiff alleging unfair competition under Section 1125(a) must establish that " '(1) [his] mark is protectable [32] and (2) the defendant's use of [an identical or similar] mark is likely to cause confusion among consumers.' " *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir.2004) (quoting *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001)) (citation omitted). It is axiomatic that "[t]he general concept underlying the likelihood of confusion is that the public believes that 'the mark's owner *sponsored or otherwise approved* the use of the trademark.' " *Wynn Oilo. v. Am. Way Service Corp.*, 943 F.2d 595 (6th Cir.1991) (quoting *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir. 1983)) (citation omitted). Thus, a plaintiff who alleges a claim under Section 1125(a) cannot prevail if he does not establish "the existence of a likelihood of confusion as to the source or origin of the plaintiff's and defendant's products." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 645 (6th Cir.2002).

■ With regard to its federal unfair competition claim, Plaintiff has not alleged: (1) that its "mark" is protectable and (2) that Defendant's use of an identical or similar "mark" is likely to cause confusion. (*See* Compl. ¶¶ 43–44 (alleging Defendant's "access to, or ability to gain access to," Plaintiff's Proposal Document afforded Defendant the opportunity to "enter the marketplace with respect to Fortune 100 companies, which is a significant target market for Curcio Webb.")). Plaintiff's federal unfair competition allegations are insufficient to set forth an unfair competition claim under 15 U.S.C. § 1125(a). Thus, the Court hereby dismisses Plaintiff's federal unfair competition claim. By extension, Defendant's Motion with respect to Plaintiff's request for attorney's fees and enhanced damages pursuant to 15 U.S.C. § 1125(a), is **GRANTED.**[33]

ages for unfair competition under 15 U.S.C. § 1125(a)—a claim that forms part of the basis of Count IV. (Compl. ¶ 5 (Prayer for Relief Section)).

31. Alternatively, Defendant asserts that even if Plaintiff alleges that Count IV (unfair competition and misappropriation) contains an element of confusion, Plaintiff's petition for attorney's fees and punitive damages is still untenable because Count IV lacks an allegation of willfulness.

32. To be protectable, " 'a mark must be capable of distinguishing the products [or services] it marks from those of others.' " *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir.2004) (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir.1999)). Also, marks are often classified in categories of (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Suggestive, arbitrary, and fanciful marks are inherently distinctive and receive Lanham Act protection without proof of secondary meaning. *New York Racing Ass'n v. Perlmutter Publ., Inc.*, 959 F.Supp. 578, 580 (N.D.N.Y.1997). Descriptive marks attain Lanham Act protection only if the mark has acquired secondary meaning. *Id.* Finally, generic marks are never protected under the Lanham Act. *Id.*

A "trademark" includes: "any word, name, symbol, or device, or any combination thereof" that is "used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. The term "mark" includes, *inter alia,* "any trademark." *Id.*

33. The Court notes that in dismissing Plaintiff's federal unfair competition claim in Count IV (unfair competition and misappropriation), Plaintiff may still pursue its unfair competition claim under 15 U.S.C. § 1125(a) in Count II (false designation of origin). *See Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1122–23 (6th

Next, Defendant, in its Reply Memorandum, argues that Plaintiff's common law unfair competition and misappropriation claims in Count IV are preempted by 17 U.S.C. § 301(a).[34] (Def.'s Reply Mem. at 13–14). According to Defendant, its alleged copying forms the basis of Plaintiff's common law unfair competition and misappropriation claims. (Def.'s Reply Mem. at 15 (referring to Plaintiff's characterization of Count IV); Pl.'s Mem. Opp'n at 5–6). Because Defendant asserts that Plaintiff's common law unfair competition and misappropriation claims are preempted by the Copyright Act, Defendant argues that Plaintiff's petition for punitive damages under Count IV to the extent that such damages are available under common law necessarily fails. (Def.'s Reply Mem. at 13).

To support its preemption argument, Defendant asserts that because Plaintiff's common law claims satisfy both elements of the 17 U.S.C. § 301 preemption test, Plaintiff may not recover attorney's fees or enhanced damages based upon its common law unfair competition and misappropriation claims. (Def.'s Reply Mem. at 15) (citing the Sixth Circuit's 17 U.S.C. § 301

preemption test, as set forth in *Wrench L.L.C. v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir.2001), *cert. denied*, 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 885 (2002)). In *Wrench*, the court determined that Section 301 preempts state common law or statutory claims if: "(1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Id.* (citations omitted). According to Defendant, Plaintiff's Proposal Document falls within the scope of copyright subject matter because in Count I (copyright infringement) of Plaintiff's Complaint, Plaintiff avers that Defendant used Plaintiff's Proposal Document in violation of the Copyright Act, and in Count IV (unfair competition and misappropriation) Plaintiff "challenges" Defendant's copying of the same document. (Def.'s Reply Mem. at 15).

Furthermore, Defendant claims that Section 301 preempts state law claims of unfair competition in which a plaintiff alleges that a defendant copied its work.[35]

Cir.1996) (noting that the district court regarded the plaintiff's false designation of origin claim as distinct from the unfair competition claim, but stating: "false designation is simply a species of unfair competition[;] . . . [t]hat the two claims are one and the same is made clear both by the language of the statute, and by many cases"). *Id.* (citing 15 U.S.C. § 1125(a); *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 923 (Fed.Cir.1995), *cert. denied*, 516 U.S. 1174, 116 S.Ct. 1268, 134 L.Ed.2d 215 (1996)).

**34.** Section 301 states in relevant part:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as

specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103 . . .

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301(a)-(b).

**35.** Defendant references a number of federal cases in which courts have addressed the preemptive power of Section 301 when plain-

(Def.'s Reply Mem. at 15). Defendant relies primarily on *Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir.2004), which held that the plaintiff's claims of unfair competition and misappropriation were preempted by 17 U.S.C. § 301.[36] (Def.'s Mot. Supplement Authorities at 3). Thus, Defendant suggests that the state law claims of unfair competition and misappropriation as alleged in Count IV are similarly preempted under Section 301. (Def.'s Mot. Supplement Authorities at 2–3).

In *Stromback*, the plaintiff alleged that he had "expended significant time, effort, and money" to create his screenplay, and that he expected to reap the "benefits of the production of the screenplay into a film for commercial sale." *Stromback*, 384 F.3d at 301 (internal citations omitted). The plaintiff also averred that the defendant misappropriated his poem and screenplay in order to "reap the benefits" that he was "expecting." *Id.* at 301–2

Without setting forth the elements of a misappropriation claim under Michigan law, the court determined that the "essence" of Mr. Stromback's commercial misappropriation claim was that the defendant copied portions of his poem and screenplay. *Id.* at 302. The *Stromback* court observed that "[c]ourts faced with similar misappropriation claims have held them to be preempted by the Copyright Act because they allege an act that infringes upon one of the exclusive rights set forth in Section 106." *Id.* (citing *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir.1995); *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985); *Artie Fields Prods., Inc. v. Channel 7 of Detroit, Inc.*, No. 94–CV–70730–DT, 1994 WL 559331, at *2–3 (E.D.Mich. June 10, 1994); 1 NIMMER ON COPYRIGHT § 1.01[B][1][f][iii] ). Although the court acknowledged that a misappropriation claim in which a plaintiff alleges an "extra element" such as a confidential

---

tiffs have brought state law claims that are predicated on the alleged violation of an exclusive right under 17 U.S.C. § 106. *See* Def.'s Reply Mem. at 15–16 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir.1992); *United States ex rel. Berge v. Bd. of Trs. of Univ. of Ala.*, 104 F.3d 1453, 1464 (4th Cir.1997), *cert. denied*, 522 U.S. 916, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1165 (1st Cir.1994); *Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F.Supp.2d 95, 108 (D.Mass.2001); *Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115, 1128 (N.D.Cal.2001); *Info. Handling Servs., Inc. v. LRP Publ'ns, Inc.*, No. 00–1859, 2000 WL 433998, *4 (E.D.Pa.2000 Apr. 18, 2000)).

**36.** On September 30, 2004, Defendant petitioned this Court for leave to supplement the authorities that Defendant relies upon in support of its Motion for Judgment on the Pleadings ("Motion to Supplement Authorities"), with the Sixth Circuit's recent decision in *Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir.2004). On November 29, 2004, Magistrate Judge King granted Defendant's unopposed Motion to Supplement Authorities.

It is essential to note that in *Stromback*, the plaintiff did not appeal the district court's judgment with respect to its award of summary judgment in favor of the defendant on the plaintiff's unfair competition claim. *See Stromback*, 384 F.3d at 300 ("On appeal, Stromback takes issue only with the district courts dismissal of his claims for commercial misappropriation, misappropriation of trade secrets, and interference with prospective economic advantage claims."). Although the *Stromback* court referenced other courts that have dismissed a plaintiff's misappropriation and unfair competition claims because such claims were based on alleged violations within the purview of the federal copyright laws, contrary to Defendant's assertion, the Sixth Circuit did not address, directly, whether the plaintiff's unfair competition claim would be dismissed under 17 U.S.C. § 301 because the issue was not before the court on appeal. *Id.*; (*see* Def.'s Mot. Supplement Authorities at 3 (discussing *Stromback* and stating "[t]he Sixth Circuit held that 'this claim [of unfair competition and misappropriation] is preempted.' ")).

or fiduciary relationship survives Section 301 preemption, it held that Mr. Stromback's assertion that his misappropriation claim was based on the "time, effort, and money that he expended in developing" his screenplay is not an "extra element" which prevented his claim from being preempted under Section 301. *Stromback*, 384 F.3d at 302 (citing *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976–77 (9th Cir.1987), *overruled on other grounds; Mayer v. Josiah Wedgewood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)).

In the context of *Stromback* and applying the two-prong test set forth in *Wrench*, this Court now addresses whether Plaintiff's common law unfair competition and misappropriation claims are preempted by copyright law.

### 1. Subject Matter of Plaintiff's Common Law Unfair Competition and Misappropriation Claims

Under the first prong of the *Wrench* test, the *Stromback* court reasoned that, "[t]he subject matter requirement of Sec-

tion 301 is satisfied if a work fits within the general subject matter of Sections 102 and 103 of the Copyright Act, regardless of whether it qualifies for copyright protection." [37] *Id.* at 300 (citing *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 676 (7th Cir.1986) (quoting H.R.Rep. No. 94–1476, at 131, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5747). The court in *Wrench* has also decided that the scope of the Copyright Act's subject matter is more expansive than the scope of its protection. *Id.* (citing *Wrench LLC v. Taco Bell Corp. (Wrench I )*, 256 F.3d 446, 454–55 (6th Cir.2001)). In the case sub judice, the parties agree that Plaintiff's Proposal Document is within the subject matter of copyright. *See, e.g.*, Compl. ¶ 9 ("[T]he text, tables, questionnaires, forms and selection, organization and layout of the information contained in the Proposal Document are the subject of copyright."); (Compl.¶ 23) (stating that Plaintiff owns a registered copyright for Plaintiff's Proposal Document and Defendant copied that document)); (Def.'s Reply Mem. at 15 (stating that Plaintiff's Propos-

---

**37.** Section 102 of the Copyright Act states:

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.
(1) literary works;
(2) musical works, including accompanying words;
(3) dramatic works, including any accompanying music;
(4) pantomimes and choreographic works;
(5) pictorial, graphic, and sculptural works;
(6) motion pictures and other audiovisual works;
(7) sound recordings; and
(8) architectural works.
(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or dis-

covery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.
17 U.S.C. § 102.
Section 103 of the Copyright Act provides:
(a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.
(b) The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.
17 U.S.C. § 103.

al Document is within the purview of copyright subject matter)). Thus, the Court finds that the first element of the Section 301 preemption test is satisfied.

### 2. Equivalency Analysis of Plaintiff's Common Law Unfair Competition and Misappropriation Claims

■ With respect to the second element of the Section 301 preemption test, in undertaking an equivalency analysis, courts apply "a functional test" to determine if the alleged state right is equivalent to any of the exclusive rights protected under 17 U.S.C. § 106.[38] *Stromback*, 384 at 301 (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir.1994)). "In determining equivalency, a court should compare 'the elements of the causes of action . . ., not the facts pled to prove them.' " *Id.* at 304. (quoting *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655 (4th Cir.1993)). Whether a plaintiff alleges each element of a claim is an inquiry that requires FED. R. CIV. P. 12(b)(6) analysis and does not have a bearing on the question of whether a plaintiff's claim is preempted under 17 U.S.C. § 301. *Id.* (citing *Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115, 1131 (N.D.Cal.2001)). Yet, a court may have to examine "the facts pled by the plaintiff in order to determine whether the acts giving rise to the state law claim are merely acts of copyright infringement."

*Id.* (citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C.Cir.2002)). Finally, the *Stromback* court stated:

> Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Id.* at 301 (quoting *Wrench I*, 256 F.3d at 456) (citations omitted). In *Stromback*, the Sixth Circuit emphasized that even if an extra element exists, preemption will be precluded "only where the element changes the nature, rather than the scope[ ] of the action." *Id.* (citing *Data General*, 36 F.3d at 1164–65). With this standard in mind, this Court can proceed with an equivalency analysis of Plaintiff's common law unfair competition claim and Plaintiff's common law misappropriation claim.

### a. Plaintiff's Common Law Unfair Competition Claim

■ Ohio's common law of unfair competition generally "consists of repre-

---

38. Section 106 of the Copyright Act provides: Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.
17 U.S.C. § 106.

sentations by one person, for the purpose of deceiving the public, that his goods are those of another." *Water Mgmt., Inc. v. Stayanchi,* 15 Ohio St.3d 83, 472 N.E.2d 715, 717 (1984) (citing *Drake Med. Co. v. Glessner,* 68 Ohio St. 337, 67 N.E. 722 (1903); *Henry Gehring Co. v. McCue,* 23 Ohio App. 281, 154 N.E. 171 (1926)). Unfair competition, as defined under Ohio common law, also extends to "commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." *Stayanchi,* 472 N.E.2d at 717 (citing *McCue,* 154 N.E. at 171).

Plaintiff's common law unfair competition claim, by its own admission, is predicated on Defendant's alleged copying of Plaintiff's Proposal Document, and therefore, is preempted under Section 301. *Sem–Torq, Inc. v. K mart Corp.,* No. 1:89 CV 1318, 1990 WL 278987, at *5 (N.D.Ohio Oct.4, 1990) ("The Copyright Act preempts those state law claims which are equivalent to federal copyright law. 17 U.S.C. § 301. This provision requires that state law claims which are predicated on alleged acts of copyright infringement such as unfair competition ... are preempted by federal copyright law."). *See also Stromback,* 384 F.3d at 304 (finding that courts may have to examine the facts that a plaintiff pleads in order to determine whether "the acts giving rise to the state law claim are merely acts of copyright infringement") (citing *Sturdza v. United Arab Emirates,* 281 F.3d 1287 (D.C.Cir.2002)).[39] Accordingly, Plaintiff is not entitled to recover attor-

ney's fees or enhanced damages under a common law theory of unfair competition because such claim is preempted; therefore, the Court dismisses Plaintiff's common law unfair competition claim.

Based upon the foregoing, Defendant's Motion, with respect to Plaintiff's request for attorney's fees and enhanced damages for its common law unfair competition claim under Count IV, is **GRANTED.**

### b. Plaintiff's Common Law Misappropriation Claim

■ Ohio Courts have recognized the separate tort of misappropriation in contexts such as misappropriation of trade secrets and misappropriation of another's name or likeness. *DeGidio v. W. Group Corp.,* 191 F.Supp.2d 904, 919 (N.D.Ohio 2002). In Count III of the Complaint, Plaintiff alleges statutory and common law misappropriation of trade secrets, and based upon the Complaint, it is evident that Plaintiff's common law misappropriation claim in Count IV (unfair competition and misappropriation) is not based on a theory of misappropriation of trade secrets. Furthermore, nothing in Count IV suggests that Plaintiff is alleging that Defendant misappropriated its name or likeness. *See generally Seifer v. PHE, Inc.,* 196 F.Supp.2d 622 (S.D.Ohio) (discussing the elements of a claim of misappropriation of name or likeness within the invasion of privacy context). Count IV merely references Defendant's "access to or ability to gain access to" Plaintiff's Proposal Document and how this provided Defen-

---

**39.** *See* also 1 NIMMER ON COPYRIGHT, § 1.01[B][1][e] asserting that state law claims of unfair competition that are premised on "passing off" are not preempted under the Copyright Act and providing the following useful example:

If A claims that B is selling B's products and representing to the public that they are A's, that is passing off. *If, by contrast, B is selling B's products and representing to the*

*public that they are B's, that is not passing off. A claim that the latter activity is actionable because B's product replicates A's, even if denominated "passing off," is in fact a disguised copyright infringement claim, and hence is pre-empted.*

*Id.* (emphasis added). Based upon Plaintiff's allegations in Count IV, Plaintiff is not asserting a state law claim of unfair competition that is grounded in a theory of "passing off."

dant with the opportunity to "enter the marketplace with respect to Fortune 100 companies, which is a significant target market for Curcio Webb." (Compl.¶¶ 43–44). Thus, the Court finds that Plaintiff failed to plead adequately the elements of common law misappropriation under Ohio law and hereby dismisses Plaintiff's common law misappropriation claim in Count IV.

Based upon the foregoing, Defendant's Motion, with respect to Plaintiff's common law misappropriation claim, is **GRANTED.**

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion [Docket No. 15] is **GRANTED** with respect to Counts I (copyright infringement), II (false designation of origin), and IV (federal and common law unfair competition and common law misappropriation), but **DENIED** with respect to Count III. Plaintiff's common law misappropriation of trade secrets in Count III is dismissed.

**IT IS SO ORDERED.**